Motion to dismiss appeal allowed January 17; order dismissing
appeal vacated March 7; argued on merits May 23;
affirmed June 6; rehearing denied
July 6, 1939

## STATE *v.* ROSSER ET AL.

(86 P. (2d) 441, 87 P. (2d) 783, 91 P. (2d) 295)

In Banc.

*Charles W. Robison* and *Leland B. Shaw*, both of Portland, and *George F. Vanderveer*, of Seattle, Wash., for appellant.

*Bruce Spaulding*, District Attorney, of Dallas, *Ralph E. Moody*, of Salem, and *Oscar Hayter*, of Dallas, for the State.

RAND, J. This is a motion to dismiss an appeal from a judgment of conviction in a criminal case. The facts are as follows: The defendant, Albert Earl Rosser, was convicted in Polk county of the crime of arson and on August 12, 1938, was sentenced to imprisonment in the Oregon state penitentiary for a term of 12 years. On August 23, 1938, he filed in the office of the county clerk of said county a notice of appeal with proof of service duly indorsed thereon by the district attorney and by the county clerk.

Section 13-1220, Oregon Code 1930, which applies to appeals in criminal cases, provides that:

"Upon appeal being taken, the clerk of the court where the notice of appeal is filed, must within 30 days

thereafter, or such further time as such court, or the judge thereof may allow, transmit a certified copy of the notice of appeal, certificate of cause, if any, and judgment roll to the clerk of the supreme court.''

No certified copy of the transcript or any of the documents mentioned in the foregoing statute were transmitted to this court within the thirty days allowed by law, nor was any application for an extension of time for the filing of the transcript made or allowed by the court or judge thereof. On the contrary, an affidavit, filed on behalf of the defendant, shows that a transcript of the evidence had been ordered and that a bill of exceptions was to be prepared and settled before the transcript was to be transmitted and filed in this court. Notwithstanding this, the defendant contends that, under the statute, it was the sole duty of the clerk of the trial court, and not of the defendant, to transmit these papers to the clerk of this court.

■ Upon this question, in *State ex rel. v. Estes*, 34 Or. 196, 210, 51 P. 77, the court said:

''Such requirement does not relieve the appellant from the necessity of showing that the failure of the clerk to file the transcript within the time prescribed by law was not imputable to him.''

This rule was quoted with approval in *State v. Williams*, 55 Or. 143, 145, 105 P. 716, where the court said: '' * * * Tested by this rule, it will be seen that if, within five days from filing the notice of appeal, the papers on file in this cause in the office of the clerk of the trial court had been examined, it would have been ascertained that the original bill of exceptions, which was to have been sent up, had not been transmitted, and upon such discovery an order could undoubtedly have been secured, extending the time in which to file the transcript.''

Again, in *State v. Dickerson,* 55 Or. 390, 392, 106 P. 790, in a decision written by Mr. Justice McBride, the court said:

"It does not appear that the clerk was even requested to send up the transcript or that his attention was directed to it in any way, nor was any effort made within the five days to have the time for filing the transcript extended. The sole excuse offered is that counsel was waiting to have the bill of exceptions settled. The very fact that an unsigned bill of exceptions was among the papers on file in his office, would probably induce the clerk to believe that the transcript was not yet ready for transmission to this court."

The court then applied the rule, saying:

"This case is fairly within the rule announced by this court in State v. Williams, 55 Or. 143, 105 P. 716, and must be dismissed."

Referring again to this same section and to the duty of the clerk in respect to the transmission of these papers, this court, in *State v. Keeney,* 81 Or. 478, 159 P. 1165, said:

"Under this section we have frequently held that, unless the failure to file the transcript within the time prescribed by law was shown to be due to the negligence of the clerk, the appeal would be dismissed:"
citing in support thereof *State v. Williams,* supra, *State v. Dickerson,* supra, *State v. Douglas,* 56 Or. 20, 107 P. 957, and *State v. Webb,* 59 Or. 235, 117 P. 272. The above quotation from *State v. Keeney,* was quoted with approval and applied in *State v. Fehl,* 147 Or. 290, 292, 32 P. (2d) 1013.

Again, in a later decision in *State v. Keeney,* 82 Or. 400, 161 P. 701, where the defendant filed another transcript predicated on the first notice of appeal and

claimed the right to do so under a stipulation that the appellant should have ten days' additional time within which to file his transcript and tender a bill of exceptions, the court, speaking through Mr. Justice HARRIS, said:

"* * * Even though it be assumed that the time for filing the transcript could be extended by the stipulation of the parties without an order of the court, nevertheless the defendant is in no position to claim any benefit from the stipulation, for the reason that the transcript was not filed until more than 10 days after March 21. The proposed bill of exceptions was not even tendered until April 5, 1916. However, this court has held in Davidson v. Columbia Timber Co., 49 Or. 577, 91 P. 441, cited with approval in State v. Douglas, 56 Or. 20, 107 P. 957, that the parties cannot by a stipulation effect an extension without an order of the court. The delay was not the fault of the clerk, and as said in State v. Morgan, 65 Or. 314, 316, 132 P. 957, 958:

" 'After the expiration of the time allowed by the statute for filing copies of the documents required, neither the Circuit court nor this court has authority to make an order nunc pro tunc extending the time, or to change the statute by granting a different right of appeal than as provided for by the statute.'

"There is no alternative except to dismiss the appeal; and it is so ordered."

To the same effect, see *Hill v. Lewis,* 87 Or. 239, 170, P. 316.

Again, in *Hay v. Yokell,* 147 Or. 148, 32 P. (2d) 578, this court, speaking through Mr. Justice BAILEY, said:

"This court, in Kelley v. Pike, 17 Or. 330, 20 P. 685, after calling attention to the provision of the above statute authorizing the court to extend, by order, the time within which to file the transscript, and pointing

out that the statute requires such order to be made 'within the time allowed to file the transcript', said:

" 'In view of the latter provision, this court would hardly undertake to hold that it had authority after the expiration of the time there specified to enlarge the time for filing the transcript. A court can not create jurisdiction for itself; it must be conferred by law, and the mode pointed out whereby it may be acquired must be substantially complied with, in order to obtain it. We would have as much right to enlarge the time for the service of the notice of appeal as we would have to enlarge the time for filing the transcript after the time specified in the code had expired. It would be extra-judicial in either case.' "

The same rule applies to appeals in civil cases. Section 7-507, Oregon Code 1930, governing such appeals, provides that:

"Upon the appeal being perfected the appellant shall, within thirty days thereafter, file with the clerk of the appellate court a transcript, etc."

Under this section, it has been uniformly held that, where this requirement of the statute has not been complied with, this court has no jurisdiction to review the judgment or order appealed from and that the appeal must be dismissed for lack of jurisdiction. See *Kelley v. Pike*, supra; *McCarty v. Wintler*, 17 Or. 391, 21 P. 195; *Nestucca Wagon Road Co. v. Landingham*, 24 Or. 439, 33 P. 983; *Connor v. Clark*, 30 Or. 382, 48 P. 364; and *Davidson v. Columbia Timber Co.*, 49 Or. 577, 91 P. 441. In *Western Loan Co. v. Sphier*, 93 Or. 677, 184 P. 496, this court, speaking through Mr. Chief Justice McBride, said:

"The filing of a transcript in the supreme court within the time allowed by law, or within any extension

of that time, is jurisdictional and this court has no power to excuse a default in that respect.''

However, the defendant contends that the rule to which we have referred is not applicable in the instant case for the reason that, after the expiration of the 30-day period but within the sixty days allowed by law for the taking of an appeal, the defendant served and filed a second notice of appeal and caused the transcript to be transmitted to the clerk of this court within thirty days thereafter.

■ It is well settled in this state that where an appeal has once been perfected, the right to take a second or further appeal from a judgment or order of the circuit court is at an end. In *Schmeer v. Schmeer*, 16 Or. 243, 17 P. 864, it was held that:

''When a party perfects an appeal and then abandons it, his right of appeal is exhausted, the power over the subject is functus officio, and cannot be exercised the second time.''

To this effect, see *Columbia City Land Co. v. Ruhl*, 70 Or. 246, 134 P. 1035, and cases there cited, and *McKinney v. Nayberger*, 138 Or. 203, 295 P. 474, and cases cited. In the case last cited, Mr. Chief Justice BEAN said:

''It is well settled that when a party abandons an appeal by allowing the time in which the transcript may be filed to expire without having filed such transcript, the appeal will be dismissed as abandoned: (citing authorities). Nevertheless, until an appeal is perfected, it may be abandoned and a new appeal taken: Van Auken v. Dammeier, 27 Or. 150, 40 P. 89; Holladay v. Elliott, 7 Or. 483.''

■ The rule that where an appeal has been taken, no second or subsequent appeal may be taken from the

same judgment or decree, applies only where the appeal has been perfected and has no application where, because of a defect in the first notice of appeal, the attempted appeal was insufficient to confer jurisdiction upon the appellate court. Illustrations of attempted appeals not perfected, where second appeals were allowable, are to be found in the two cases last cited and in *Schmeer v. Schmeer*, supra, *Fisher v. Tomlinson*, 40 Or. 111, 60 P. 390, 66 P. 390, and *Rohrbacher v. Strain*, 95 Or. 1, 176 P. 990, 186 P. 583.

The defendant contends that the first notice of appeal served and filed in this case was so defective as to bring this case within the exception to the general rule to which we have just referred. This contention, we think, cannot be sustained. The first notice of appeal, omitting the title of the court and cause in which the judgment was rendered, reads as follows:

"TO THE STATE OF Oregon, TO I. H. VAN WINKLE, Attorney General for the State of Oregon, and TO BRUCE SPAULDING, District Attorney for Polk County, Oregon, and OSCAR HAYTER, Assistant District Attorney, and TO C. S. GRAVES, Clerk of Polk County, State of Oregon:

YOU AND EACH OF YOU will please take notice that the defendant, Albert Earl Rosser, does hereby appeal unto the Supreme Court of the State of Oregon from that certain judgment of conviction and the sentence of twelve years in the Oregon State Penitentiary imposed thereon, and the whole thereof, and each and every part thereof, made and entered in the above-entitled court and cause on the ⸺day of August, 1938.

Dated at Polk County, Oregon, this 23rd day of August, 1938.

C. W. Robison,
One of attorneys for defendant."

From this and the indorsements thereon which we have not copied, it will be seen that the first notice of appeal, in conformity with section 13-1213, was signed by one of the defendant's attorneys and notified the district attorney and the county clerk, who were the only parties necessary to be notified, that the defendant appealed from the judgment of conviction and the sentence of twelve years in the Oregon State Penitentiary made and entered in the above entitled court and cause on the —— day of August and, from the indorsements thereon, it appears that the notice of appeal was served upon the district attorney and county clerk, as required by section 13-1209 and section 13-1210, Oregon Code 1930, and was then filed in the office of the county clerk on August 23, 1938, within the time allowed by law to take an appeal.

The defendant contends that, because the date of entry was left blank, only the month and year being stated, the appeal was never perfected and, therefore, that he had a right to file a second notice of appeal.

The second notice of appeal, which was served upon the same parties and filed in the same court, was an exact copy of the first notice of appeal with the sole exception that the date which had been left blank in the first notice of appeal was inserted, namely: "the 12th day of August, 1938".

As said by this court in *State v. Keeney,* 81 Or. 478, 159 P. 1165:

"* * * In criminal cases, there being no undertaking for costs required, the appeal becomes perfected by serving and filing with the clerk a notice of appeal".

Hence, this appeal was perfected unless the failure in the first notice to include the date of entry of the

judgment appealed from is fatal and rendered the appeal void.

Upon this question, the defendant relies upon *Rohrbacher v. Strain,* supra. In that case the only description in the notice of appeal of the judgment appealed from was that the plaintiff "appeals * * * from the judgment and decree made and entered in the above-entitled court and cause on the 17th of June, 1918, and the whole thereof", when there was in fact no judgment or decree entered on that day but one was entered on a different day and, since the notice of appeal was insufficient to identify the judgment, the first notice of appeal was rightfully dismissed. However, a second appeal was taken in that case within the time allowed by law and a decision was rendered on the merits upon the ground that the first notice of appeal was insufficient and invalid because not containing such a description of the judgment appealed from as would identify the judgment from which an appeal was sought.

██ In the instant case, however, the notice of appeal contains a complete statement of the nature of the action, the parties, the title of the court and the sentence pronounced, by which the judgment appealed from may be identified and, for that reason, the date of its entry was not necessary to be stated therein. This conforms to the ruling of this court in *State v. Hanlon,* 32 Or. 95, 48 P. 353, where it was held that a notice of appeal which states the nature of the action, the parties, the title of the court and the sentence pronounced, is sufficient to confer jurisdiction, although it fails to designate the time when said judgment was rendered.

As said in *Moon v. Richelderfer,* 56 Or. 246, 108 P. 178:

"When an appeal is perfected, it cannot be abandoned thereafter and a second appeal taken. The right of appeal is lost if the transcript is not filed within the time allowed by law or an extension thereof. This is jurisdictional. (Citing authorities)."

■ Under the settled law of this state as shown by the decisions above referred to, this court has no alternative except to dismiss the appeal, and it is so ordered.

LUSK, J., did not participate in this opinion.

---

Former order dismissing appeal set aside, and appeal reinstated
March 7, 1939

ON ORDER REINSTATING APPEAL

(87 P. (2d) 783)

In Banc.

Appeal from Circuit Court, Polk County.

ARLIE G. WALKER, Judge.

Former order dismissing appeal set aside, and appeal reinstated.

*George F. Vanderveer,* of Seattle, Wash., and *Charles W. Robison, Leland B. Shaw, George Mowry,* and *John Mowry,* all of Portland, for appellant.

*Bruce Spaulding,* District Attorney, of Dallas, *Ralph Moody,* of Salem, and *Oscar Hayter,* of Dallas, for the State.

BAILEY, J. This court on January 17, 1939, by written opinion, held that the first appeal attempted to be taken by the defendant, Albert Earl Rosser, by

serving and filing notice of appeal on August 23, 1938, had been abandoned by failure of the appellant to file in this court a transcript of the record in the case within 30 days after August 23 or within any extention of time granted during said 30 days; that by such failure the defendant's right to take an appeal to the supreme court had been exhausted and terminated; and that the second notice of appeal, which was served and filed October 4, 1938, was without force or effect.

The correctness of that ruling is questioned by the appellant, who has filed a petition for rehearing of the motion of the respondent, State of Oregon, to dismiss his appeal. Accompanying the petition is a motion by the appellant for the dismissal of his first appeal without prejudice and for an order permitting him to rely and stand upon his second notice of appeal.

In his brief filed with the said petition and motion the defendant presses upon us that he should not be deprived of the right to have his case determined upon its merits, in view of the fact that the second notice of appeal was served and filed within 60 days after the entry of judgment—the statutory period in which he could take an appeal—and that the entire transcript of the proceedings and evidence, together with exhibits, has been filed in the supreme court within the time allowed by law if the second appeal be determined to be valid. In view of the importance of this question careful consideration has been given to our prior ruling and to the additional arguments advanced and authorities submitted by the appellant and the respondent.

It is appropriate here to review briefly the history of the proceedings had in the circuit court relative to this appeal. Rosser was convicted in Polk county, Ore-

gon, of the crime of arson, and on August 12, 1938, was sentenced to imprisonment in the Oregon state penitentiary for a term of 12 years. Thereafter, on August 23, 1938, he served and filed with the clerk of the circuit court a notice of appeal from the said judgment to the supreme court. On the same day, the trial judge signed a certificate to the effect that in his opinion there was probable cause for the appeal, and ordered stay of execution pending such appeal.

On the day that notice of appeal was given, one of the attorneys for the defendant ordered from the official court reporter a complete transcript of the evidence, testimony and proceedings in the said cause. This order was given in the presence of the district attorney and assistant district attorney of Polk county. At the time the transcript was ordered, the attorney for the defendant and the attorneys representing the state of Oregon in this proceeding were advised by the court reporter that it would be impossible for her to prepare the transcript before the first day of October and that she would probably not be able to have it completed before the fifteenth of that month. Later, on October 4, 1938, the defendant by his attorney served on the district attorney and filed with the clerk a motion for an order granting him to and including the fifteenth day of November, 1938, within which to serve and file his bill of exceptions, and extending the time to file his transcript in the supreme court to and including the twenty-fifth day of that month. Attached to this motion was the affidavit of one of the defendant's attorneys setting forth the fact that the court reporter had been unable to prepare the transcript of testimony and would probably not have the same completed before November 1, and that after receiving the transcript the said attorney

would require 10 days in which to prepare the bill of exceptions. An order was made by the circuit court on October 4 granting the said motion, without any resistance made by the state's attorneys.

The defendant on October 4, 1938, also served and filed with the clerk of Polk county another notice of appeal from the judgment sentencing him, which notice was identical with the former notice of appeal served and filed August 23, 1938, with the exception that the first notice of appeal did not state the date in August on which the judgment was entered, which date was set forth in the second notice. There was also procured from the trial judge on October 4 another certificate of probable cause.

Immediately upon completing the transcript of testimony, on October 26, 1938, the court reporter sent it by express to the defendant's attorney in Portland, carrying charge and reporter's charge collect, the latter being $694.25. This amount was paid within a few days by the defendant's counsel and on November 14, 1938, the defendant's counsel served upon the district attorney the proposed bill of exceptions, containing 166 pages. Attached thereto was the transcript of testimony consisting of 925 pages. On the following day the circuit court entered an order granting to the attorneys representing the state of Oregon, at their request, until the thirtieth day of that month in which to object to the proposed bill of exceptions, and extending the time within which the bill of exceptions should be filed in the circuit court to and including December 5, 1938, and further granting to the defendant to and including December 15, 1938, in which to file his transcript in the supreme court. No objections were made on behalf of

the State of Oregon to the granting of these extensions of time to the defendant.

Thereafter, under date of December 2, 1938, the proposed bill of exceptions, with numerous changes made therein apparently at the suggestion of the attorneys for the state, was approved, settled and allowed by the trial judge. The entire record in the case, including the different notices of appeal, testimony and exhibits, was filed in this court by the defendant December 9, 1938. Prior thereto, however, on November 23, the state served by mail on attorneys for the defendant, and on November 25 filed in this court, a motion to dismiss the defendant's appeal "for the reason that no transcript of said cause was filed in this court [the supreme court] either within a period of 30 days from the date of the filing of notice of appeal in said cause or within any extension of time granted within 30 days from the date of filing of said notice of appeal."

The defendant, in support of his petition and motion, directs our attention for the first time to the case of *State v. Tucker*, 57 Or. 59, 110 P. 392. In that case the defendant was convicted of the crime of participating in a riot. He served notice of appeal, procured a certificate of probable cause and was admitted to bail. Notice of appeal was filed November 15, 1909, but the transcript was not transmitted to this court within the statutory period, and, in the language of the court, "his attempted appeal" was "therefore void". As the law then existed, the defendant had five days after the filing of the notice of appeal within which to file the transcript in the supreme court. The defendant on July 6, 1910, moved "to dismiss the appeal without prejudice, indicating his desire to take a second appeal."

On January 11, 1910, the defendant Tucker by his attorneys filed with the clerk of the circuit court for Wallowa county, wherein the case had been tried, a motion for an extension of time within which to file a bill of exceptions until February 21, 1910. The affidavit in support of this motion stated that the transcript of testimony was not received by defendant's attorneys until December 23, 1909, and that due to the fact that the affiant had no office help he had been unable to prepare a bill of exceptions in said cause; that he was also engaged in the circuit court for Umatilla county and was too busy in his office to prepare the bill of exceptions; and that he would be busy in court for some time to come. The transcript on appeal was filed in the supreme court May 7, 1910.

In the brief in support of the motion to dismiss the appeal in the Tucker case it was stated that the failure to file the transcript within five days after the notice of appeal had been filed was due to oversight on the part of attorneys for the appellant, "due to the fact that further time had been obtained for filing a bill of exceptions, and it was thought that the time for filing a transcript herein was thereby extended"; that the attorneys desired to assure the court that the appeal had been taken in good faith and not for the purpose of delay; and that the effort of the defendant to take a second appeal was "in good faith and not for the purpose of delay".

The record does not contain any motion or order allowing an extension of time for filing the bill of exceptions other than the motion hereinbefore mentioned. There does not appear to have been any further extension of time for preparing, serving and filing the

bill of exceptions. The transcript was not filed until two and one-half months after the expiration of the extension of time granted by the circuit court for filing the bill of exceptions, and five and one-half months after the last day to file the transcript. At the time of Tucker's conviction, a defendant had one year within which to appeal from the circuit court to the supreme court.

In the opinion granting the defendant's motion, it was said that it had been held in this court that the "dismissal of an appeal in civil cases is a final disposition of the case, and that a second appeal can not thereafter be taken", citing numerous cases. The court then pointed out the following distinction between civil and criminal cases:

"We have also held that it is incumbent on the defendant in a criminal case to use diligence to see that his transcript is filed in this court within the time required by law, and that upon his failure to show such diligence his appeal will be dismissed. The method of taking appeals provided by the criminal code being complete within itself, the decisions in civil cases, heretofore cited, throw no light on this subject, and, as the question is a new one in this court, we shall decide it in the light of decisions of other states having statutes similar to our own.

"We find the great weight of authority is to the effect that, in the absence of some statutory provision to the contrary, the dismissal of an appeal without prejudice is not a bar to a second appeal taken within the time allowed by statute for that purpose. This rule is applied with the qualification that the first appeal has become ineffective for some technical reason, either in the method of taking it or through an honest failure to file the transcript in the appellate court within the time required by law. 2 Ency. Pl. & Pl. [Pr.] 357; Evans v. State Bank, 134 U. S. 330 (10 Sup. Ct. 493; 33 L. Ed.

917); State v. Chastain, 104 N. C. 900 (10 S. E. 519); Roberts and Hoyt v. Tucker, 1 Wash. T. 179; Ward v. Hollins, 14 Md. 158; Kinner & Butler v. Dodds, 35 Ark. 29. This seems to be the practice in most of the jurisdictions, excepting such as have statutory provisions either expressly or by implication prohibiting a second appeal.

"The motion will be allowed, therefore, and the appeal dismissed without prejudice."

In *Evans v. State National Bank*, 134 U. S. 330, 33 L. Ed. 917, 10 S. Ct. 493, cited with approval in *State v. Tucker*, supra, an order was entered allowing Mrs. Evans and her husband to appeal to the supreme court of the United States, and on the same day a bond was filed and approved by the court. "Nothing further was done, and the record not having been filed in this court during the succeeding term, the appeal became of no avail, because not duly prosecuted." Thereafter Mr. and Mrs. Evans again petitioned the circuit court to allow an appeal from the decree to the supreme court. Bond was given and the record was filed in the supreme court during the term. A motion was thereupon made to dismiss the appeal "upon the grounds that it could not be granted, because the court had exhausted its power by the allowance of the first appeal, and because, if this were not so, the second appeal was not taken within two years from the entry of the decree." In passing upon this motion the court said:

"As to the first of these grounds it may be remarked, that when the term elapsed at which the first appeal was returnable, without the filing of the record, that appeal had spent its force, and the matter was open to the taking of a second appeal, as it would have been if the appellee had docketed the cause and had it dismissed."

The court then stated that the appeal had been taken within the required two years, and refused to dismiss the second appeal.

*Kinner & Butler v. Dodds*, 35 Ark. 29, is another case given as authority in *State v. Tucker*, supra. Instead of referring particularly to that case we direct attention to a later decision of the supreme court of Arkansas in *Robinson v. Arkansas Loan & Trust Co.*, 72 Ark. 475, 81 S. W. 609, wherein the court stated:

"The statutes of this state require appeals to this court to be taken within one year after the decree or judgment appealed from was rendered. What is an appeal? 'The word, when accurately used in law matters, means the removal of a suit in equity or of an action at law, from an inferior to a superior court.' Elliott on Appellate Procedure, § 15. When the appeal is granted and an authenticated copy of the record is filed in the superior court, the suit or action is thereby removed. The filing of the copy of the record is necessary, because it is the source from which the appellate tribunal obtains its knowledge of the facts in the case and of the questions upon which it is its duty to pronounce judgment. When it is filed, the appellate court's jurisdiction of the subject-matter is complete, and the cause is removed."

In that case there was a motion to dismiss a second appeal. In ruling upon that motion the court called attention to one of its early decisions and quoted with approval from the opinion therein as follows:

"A party who has taken an appeal without supersedeas, and failed to perfect it within the time required by law, may take another appeal at any time within the period during which appeals are allowed. In such cases it is the better, but not the necessary, practice, to have the first appeal docketed and dismissed before taking a second appeal."

The court then quotes from two other former decisions, one of them *Kinner & Butler v. Dodds*, supra, to this effect:

"A party who has taken an appeal with supersedeas, and failed to prosecute it, must docket the appeal here, and dismiss it, before he can take a second appeal."

It will thus be seen that the early Arkansas decisions made a distinction between appeals with supersedeas and appeals without supersedeas, with reference to the necessity of taking an order granting the dismissal of a first appeal before taking a second. In passing upon what might at first glance appear to be a diversity of rulings in former decisions, the court in the case now under review goes on to say:

"We see no good reason why it should be necessary to dismiss an appeal with supersedeas before another can be granted in the time prescribed by law, when it is not necessary to dismiss an appeal without supersedeas before another can be taken, unless, in the first case, it is necessary in order to enable the appellee to pursue his remedies against the sureties on the appeal bond. While it is the better practice to dismiss the appeal with supersedeas before another is taken, the same result can be obtained by dismissing the first after the second is granted. In that case the appellee can enforce his remedies on the appeal bond. It would be a needless ceremony to docket the appeal with supersedeas here, and dismiss it and the second appeal, when two appeals are pending, and then take the third appeal, when the same object can be accomplished by dismissing the first."

In *Porter v. State*, 146 Ala. 36, 41 So. 421, the defendant was convicted of murder in the second degree and his first attempted appeal was dismissed because of the failure of the transcript to show the judgment of the circuit court. Thereupon a second appeal was

taken and it was sought to dismiss that appeal on the ground "that the dismissal of the appeal was conclusive against the right of the appellant to prosecute this second appeal to this court." In denying the motion to dismiss, the court said:

"While there are some authorities to the effect that when an appeal has been dismissed the party can not take a second appeal, in most of those cases the facts were that the appellant himself voluntarily dismissed his appeal. Without subscribing to the correctness of those cases, even to that extent, we think that the great weight of authority, which we think, also, is in consonance with the analogies of the law, sustains the proposition that where the merits of the case are not passed upon, and the case was dismissed on account of the failure of some technical requirement, the party may prosecute a second appeal within the time prescribed by law": citing numerous authorities.

In the case of *Groendyke v. Musgrave*, 123 Iowa 535, 99 N. W. 144, the question involved was, as stated by the court: "May an appellant voluntarily dismiss an appeal once perfected, and thereafter, and within six months from the date of the judgment sought to be reviewed, take a second appeal?" After stating that the court answered that question in the affirmative, the opinion thus continues:

"There would seem to be no good reason for denying such right, and, as we shall see, the practice finds much support in decisions of the courts. The statute allows a party six months to take an appeal. Experience has demonstrated that lawyers are not wholly exempt from liability to mistakes, and if, having attempted to effect an appeal, counsel find that by some error or oversight their appeal is likely to be lost without a hearing upon its merits, and the statutory limitation has not yet run, why should they not be allowed to take advantage of this *locus poenitentiae* to dismiss the ineffectual appeal and begin anew? By analogy with the right freely

exercised to dismiss an original action and to renew the same, it would seem that such practice is entirely legitimate.''

The court then cites cases from 14 different states and the United States supreme court, including in the list of authorities *Evans v. State National Bank*, supra, in support of its decision. Many of the cases permit a second appeal prior to the dismissal of the first appeal.

In *Martinez v. Gallardo*, 5 Cal. 155, an attempt was made to dismiss a second appeal on the ground that one appeal had already been dismissed for failure to give a proper bond, and that the appellant had lost his right to a second appeal. In deciding this question the court said:

''We are not disposed to consider the right lost, in consequence of some mere technical or clerical mistake.

''There has been no final judgment rendered in this court, and until such judgment, an appeal ought to be entertained at any time within the period allowed by law.

''No inconvenience can result from such a rule, as the appellant is responsible in damages if this appeal be frivolous or prosecuted for delay.''

It appears, however, that a statute of California was enacted subsequent to that decision, providing that the dismissal of an appeal is in effect an affirmance of judgment, unless the dismissal is expressly made without prejudice to another appeal: *Spinetti v. Brignardello*, 54 Cal. 521.

In *Weeks v. Madler*, 20 Kan. 57, Mr. Justice Brewer, later an associate justice of the supreme court of the United States, made the following observation:

''The dismissal of one petition in error, on the ground that the record attached to it is illegal and

insufficient, is no bar to a subsequent action based upon a legal and sufficient record. There has been no adjudication upon the merits, no inquiry into the alleged errors. The record has not heretofore been so presented that we could examine it.''

"The correct rule, in our judgment," said the supreme court of Florida in *Harris v. Ferris*, 18 Fla. 81, "is that where an appeal is dismissed for irregularity, or for want of prosecution, the merits of the cause not having been determined by the appellate court, a writ of error or a second appeal may be allowed, if not prosecuted in bad faith, within the time limited by law.'' To the same effect as the foregoing decisions, see also: *Marshall v. The Milwaukee & St. Paul Railroad Company*, 20 Wis. 644; *Garrick v. Chamberlain*, 97 Ill. 620; *Beller v. Stevens*, 40 Mich. 168; *Sanders v. Moore*, 52 Ark. 376, 12 S. W. 783; *Cooper v. The Pacific Mutual Life Insurance Company*, 7 Nev. 116, 8 Am. Rep. 705; *Collins v. Gladiator Consolidated Gold Mining & Milling Co.*, 19 S. D. 358, 103 N. W. 385; *Orth v. Basker*, 30 Hawaii 429.

The question of the effect of abandonment of an appeal as barring a subsequent appeal is discussed in the following language in 4 C. J. S., "Appeal and Error", § 34, subdivision b, paragraph 1:

"The general rule is that, if a proceeding for review has been dismissed without a decision on the merits of the case, it does not bar seasonable prosecution of another appeal or proceeding in error. Application of this rule may, however, be modified or precluded, where there is a rule of court making the dismissal of an appeal final and a bar to any other appeal unless the appeal was restored after such dismissal, or a statute requiring that the dismissal of the first proceeding be expressly made without prejudice to another proceed-

ing, or the dismissal of an appellate proceeding operates as an affirmance of the judgment appealed from, or leave of court is essential to the prosecution of a second proceeding, or an appeal has been dismissed by agreement for reasons other than the failure to perfect the appeal  *  *  *''

In the same section, in subdivision c, we read:

"As a general rule, where an attempted appellate proceeding has been abandoned, and the time for taking an appeal or suing out a writ of error has not expired, another appeal or writ of error may be prosecuted."

We shall now ascertain whether there is any provision in the code of criminal procedure relating to the method of prosecuting an appeal from the circuit court to the supreme court which either expressly or by implication denies the defendant the right to take a second appeal within the period limited by statute, when the supreme court has never acquired jurisdiction of the cause, due to the failure of the clerk of the circuit court to file a transcript in the supreme court within the time required by law. In considering this matter we must bear in mind, as pointed out in *State v. Tucker*, supra, that the provisions of the criminal code for taking an appeal are complete within themselves and that the decisions in civil cases in this state "throw no light on this subject". See also, in this connection: *State v. Ellis*, 3 Or. 497; *State v. Bovee*, 11 Or. 57, 4 P. 520; *State v. Berger*, 51 Or. 166, 94 P. 181, 16 L. R. A. (N. S.) 660; and *State v. Archerd*, 144 Or. 309, 24 P. (2d) 5. In *State v. Bovee*, supra, it is said that "the provisions of section 531 of the civil code [now § 7-507, Oregon Code 1930, relating to appeals in civil cases] do not affect appeals in criminal cases."

Turning now to the sections of the code of criminal procedure relating to appeals, we find that with the exception of § 13-1205, Oregon Code 1930, not here material, they have not been amended in any respect since the code was enacted in 1864, except with reference to the time when an appeal may be taken (§ 13-1208, Oregon Code 1930) and the time in which to file the transcript with the clerk of the supreme court (§13-1220, Oregon Code 1930). Section 13-1220 is as follows:

"Upon appeal being taken, the clerk of the court where the notice of appeal is filed, must within 30 days thereafter, or such further time as such court, or the judge thereof may allow, transmit a certified copy of the notice of appeal, certificate of cause, if any, and judgment roll to the clerk of the supreme court."

The next two sections of the code provide as follows:

"If the appeal be irregular in a substantial particular, but not otherwise, the appellate court may, on motion of the respondent and notice to the defendant, order it to be dismissed."—§ 13-1221.

"The appellate court may also, upon like motion and notice, order the appeal to be dismissed if the return be not made as provided in section 13-1220, unless for good cause it retain the appeal, and require the clerk of the court below to make a further return as to any matter affecting the merits, which appears or is alleged to be omitted from the transcript."—§ 13-1222.

There is nothing in the sections hereinabove quoted, or in any part of the criminal code, which expressly denies to a defendant in a criminal case the right seasonably to give a second notice of appeal to the supreme court in those instances in which the supreme court has not acquired jurisdiction of the cause through a prior attempted appeal, due to the failure to file in this court, within the time provided by law, the required

transcript. There is no express provision contained in the criminal code which makes the dismissal of an ineffectual appeal final and a bar to another appeal; nor is there any provision therein which bars a second appeal unless the dismissal of the first proceeding is expressly made without prejudice, or which makes such dismissal operate as an affirmance of the judgment from which the appeal was taken. Nor can it be said that the provisions of the code of criminal procedure relating to appeal impliedly deny to a defendant the right, if seasonably exercised, to take a second appeal in instances in which the supreme court has not acquired jurisdiction to hear and determine the cause on its merits by virtue of a prior attempted appeal. Sections 13-1221 and 13-1222, *supra*, merely provide for the dismissal of an appeal in certain contingencies. They do not provide for the affirmance of the judgment appealed from, in the event that an attempted appeal is abandoned.

*State v. Keeney*, 81 Or. 478, 159 P. 1165, is relied upon by the state as authority for its assertion that because the defendant perfected his first appeal and failed to file a transcript in this court within the time provided by law, his right of appeal thereby became exhausted, and no further appeal was open to him. In that case the motion to dismiss was directed against a third attempted appeal. The scope of the affidavits, both in support of the motion and contra, was practically limited to the stipulations and understandings had between the district attorney and the attorneys representing the defendant. No briefs were filed.

The decision of this court therein, holding that the defendant in a criminal case could not take a second or subsequent appeal after having perfected his first

appeal, is founded entirely on adjudications relating to appeals in civil cases. The first case cited in support of the conclusion therein reached by the court is *Schmeer v. Schmeer,* 16 Or. 243, 17 P. 864, and the only authority cited in that case is *Brill v. Meek,* 20 Mo. 358. In the latter case the opinion of the Missouri court is very brief and reads as follows:

"When an appeal has once been granted, the power over the subject is functus officio and can not be exercised a second time. This has been the uniform practice. After a party, from any cause, has lost the benefit of his appeal, he is driven to his writ of error."

In the later case of *Schnaider's Brewing Co. v. Levvie,* 41 Mo. App. 584, it is pointed out that the statute of Missouri provides that if the appeal be not perfected in the manner and within the time prescribed, the appellate court shall, upon the filing of the record therein, affirm the judgment appealed from, unless good cause to the contrary be shown. The court there observed that the statement in the opinion in *Brill v. Meek,* supra, concerning the appellant's being driven to his writ of error on loss of appeal "from any cause" went beyond the scope of the question there involved and was therefore dictum, and further, that it would be inconsistent to grant a writ of error after a judgment on appeal had been affirmed due to abandonment of the appeal.

There is, however, sound reason for the rule that under the code of civil procedure of the state of Oregon when an appeal has been perfected and then abandoned by failure to file the transcript in the supreme court within the statutory period, no second or further appeal is permissible. Section 7-507, Oregon Code 1930, sets forth the procedure relating to appeals in civil matters. This section requires that the appellant shall, within a

certain period, file with the appellate court his transcript on appeal. Subdivision 2 of the section provides that if the transcript is not filed with the clerk of the appellate court within the time provided, ''the appeal shall be deemed abandoned, and the effect thereof terminated.'' And subdivision 3 of this section is as follows:

''If the appeal be abandoned as provided in subdivision 2 of this section, thereupon the judgment or decree, so far as it is for the recovery of money,. may, by the appellate court, be enforced against the sureties in the undertaking for a stay of proceedings, as if they were parties to such judgment or decree.''

It has been the uniform holding of this court, based largely on the wording of the statute above referred to, that when an appeal has been abandoned in a civil case the respondent may, upon motion, have the appeal dismissed and the judgment appealed from affirmed. In fact, the recovery could not well be ordered against the sureties in the undertaking on appeal, without affirmance of the judgment against the appellant. On the other hand, in appeals in criminal cases no bond is required of the defendant, and the only result of failure to file the transcript in time, as far as the statute relating to criminal appeals is concerned, is the dismissal of the appeal.

The decision in *State v. Keeney* is apparently in conflict with the holding in *State v. Tucker*, supra, which latter case is not therein mentioned, nor is the fact therein noted, as in the Tucker case, that the method of taking appeals provided by the criminal code is complete within itself and therefore the decisions of this court in civil cases throw no light on the subject of appeals in criminal cases. It would seem inconsistent

to hold that when an appeal has been abandoned through failure to file a transcript in the supreme court within the time prescribed, the appellant has exhausted his right of appeal, and yet to have held, as in the Tucker case, that the court could revive and grant to the appellant the right to a second appeal merely through the process of filing with the appellate court the transcript in the abandoned appeal and having it dismissed without prejudice.

*State v. Keeney,* supra, appears to be the only criminal case in the Oregon reports holding that the right to appeal has been exhausted by failure to file the transcript in the appellate court within the time allowed and that a second appeal can not thereafter be taken. The question of the right to take a second appeal was not involved in the following cases, most of which were referred to in our former opinion: *State ex rel. v. Estes,* 34 Or. 196, 51 P. 77; *State v. Williams,* 55 Or. 143, 105 P. 716; *State v. Dickerson,* 55 Or. 390, 106 P. 790; *State v. Douglas,* 56 Or. 20, 107 P. 957; *State v. Webb,* 59 Or. 235, 117 P. 272; *State v. Morgan,* 65 Or. 314, 132 P. 957; *State v. Keeney,* 82 Or. 400, 161 P. 701; *State v. Foster,* 140 Or. 200, 13 P. (2d) 609; *State v. Fehl,* 147 Or. 290, 32 P. (2d) 1013. In fact, *State ex rel. v. Estes,* supra, was not a criminal case and was not concerned with the construction of any provision of the code of criminal procedure. In the other cases cited in this paragraph there was, however, involved the dismissal of the appeal on the ground that the transcript had not been filed with the clerk of the appellate court within the time provided by law. In all those cases the appeal was dismissed for the reason, as stated by the court, that it did not appear from the showing made by the defendant that the failure of the clerk to file

the transcript was not in any way due to the defendant's negligence. The rule therein enunciated might well be followed in this instance, if we were concerned with only one notice of appeal, followed by failure of the appeal through omission to file the transcript within the required time.

Although the motion in the Tucker case pertained only to the dismissal of the abandoned appeal without prejudice, some of the authorities cited by this court in allowing the motion distinctly held that it was not necessary to procure an order dismissing an abandoned appeal before prosecuting a second appeal. As we have hereinbefore pointed out, the supreme court of the United States, in *Evans v. State National Bank,* supra, held that because the record had not been filed within the term, "that appeal had spent its force, and the matter was open to the taking of a second appeal, as it would have been if the appellee had docketed the cause and had it dismissed." None of the authorities cited in the Tucker case, with the exception of *Kinner & Butler v. Dodds,* supra, held that it was necessary to dismiss the first appeal before taking a second; and the Arkansas court, which rendered the opinion in that case, later held, as may be noted in the excerpt above quoted from *Robinson v. Arkansas Loan & Trust Company,* supra, that, "It would be a needless ceremony to docket the appeal with supersedeas here, and dismiss it and the second appeal, when two appeals are pending, and then take the third appeal, when the same object can be accomplished by dismissing the first."

It is clearly in consonance with the wording and spirit of the statute relating to appeals in criminal cases that a defendant who has, in good faith and not for the purpose of delay, attempted to appeal to this

court and failed through some technical error, such as omission to file the transcript (2 Enc. Pl. & Pr. 357), to confer jurisdiction upon the court to hear his cause, be not denied the right, if seasonably exercised, to take a second appeal. Such is the effect to be given the decision in *State v. Tucker,* supra, which ruling we find to be amply supported by the textbooks and the decisions of other jurisdictions. It does not appear to be necessary to procure an order of this court dismissing without prejudice an abandoned appeal in a criminal case, before taking a second appeal.

In the instant case the defendant was doing everything in his power to procure a transcript of the testimony at the earliest possible moment. The attorneys for the state knew that the transcript of testimony could not be completed by the court reporter until more than thirty days after the original notice of appeal was filed. They knew or should have known that when extensions of time were obtained by the defendant to prepare and present a bill of exceptions the thirty days next following the original notice of appeal—within which to file the transcript—had expired and no extension thereof had been granted, nevertheless they did not object to the extension of time or to the incurrence of a very considerable expense by the defendant in having the shorthand notes of the reporter extended; and they even requested additional time in which to file objections to the proposed bill of exceptions.

In criminal cases, execution of the judgment of conviction is not stayed during the pendency of an appeal, unless the defendant procures "a certificate of the judge of the court in which the conviction was had, or of a judge of the supreme court, that in his opinion there is probable cause for the appeal": § 13-1216,

Oregon Code 1930. Whether "there is probable cause for the appeal is a matter of judicial discretion and depends upon the opinion of the trial judge" or the judge of the supreme court to whom application is made, "after considering all the questions which were involved upon the trial of the action": *State ex rel. v. Ellis,* 156 Or. 83, 66 P. (2d) 995. An attempt to take successive appeals in a criminal case for the purpose of delay is altogether improbable, for the reason that the execution will not be stayed unless a certificate of probable cause be procured, and such certificate will not be issued unless the appeal is being prosecuted diligently and in good faith. In the present instance the circuit judge who heard all the evidence in the case issued a certificate upon the filing of the original notice of appeal and again upon the filing of the second notice, indicating that in his opinion there was probable cause for an appeal.

■ Inasmuch as the second notice of appeal was seasonably given and the transcript was lodged in the supreme court within the time required by law, this court acquired jurisdiction of the subject matter. The cause therefore is before this court for consideration and decision on the merits.

Prior to the rendering of the former opinion in this case the transcript of both the original and the second appeal, together with the bill of exceptions, transcript of testimony and exhibits in the case, had been filed with the clerk of the supreme court, and therefore no good purpose would be served by entering an order dismissing the first appeal, since it has already "spent its force" and in any event is "of no avail because not duly prosecuted"; and for the further reason that the mandate which will issue from this court upon the

final determination of the cause will show the entire disposition of all the matters herein made by this court.

Our former order dismissing the appeal is hereby set aside and vacated, and the appeal is reinstated.

ROSSMAN, BELT and BEAN, JJ., concur.

LUSK, J., not participating.

---

RAND, C. J. (dissenting). Since this case was dismissed under a former order of this court, the defendant has filed a petition for rehearing and also a motion to strike his first notice of appeal from the files and to permit him to be heard upon his second appeal.

In our former opinion we held that the appeal must be dismissed because of Rosser's failure to file the transcript within the time allowed by law and that his second appeal, which was taken after the first appeal had been perfected, was invalid.

This ruling Rosser claims was erroneous and contrary to the holding in *State v. Tucker,* 57 Or. 59, 110 P. 392. In that case, the court said:

"We find the great weight of authority is to the effect that, in the absence of some statutory provision to the contrary, the dismissal of an appeal without prejudice is not a bar to a second appeal taken within the time allowed by statute for that purpose. This rule is applied with the qualification that the first appeal has become ineffective for some technical reason, either in the method of taking it or through an honest failure to file the transcript in the appellate court within the time required by law."

If the facts in this case were the same as in the Tucker case and if the same procedure had been followed, that decision would have been controlling in the

instant case, but the facts are not the same and a different procedure has been followed. In this case, the defendant first perfected an appeal and, while that appeal was still pending and undetermined, he filed and served a second notice of appeal without obtaining any order for the dismissal of the first appeal, as was done in the Tucker case. In the Tucker case, the attorneys and the court recognized the rule that, under the decisions of this court, a second appeal could not be taken if a first appeal had been perfected unless an order was first made by this court dismissing the first appeal without prejudice to the appellant's right to prosecute a second appeal. Under the statute and decisions of this court, appeals in criminal cases are perfected by the serving and filing of a proper notice of appeal. The fact that the appellant may or may not thereafter file a transcript in this court within the time allowed by law has no bearing upon the question of when and how an appeal is perfected in a criminal case.

It is well settled, however, that, where an appeal has not been perfected by the serving and filing of a proper notice of appeal, the appeal is void and a subsequent appeal may then be taken without any court order being made dismissing the first appeal. That rule, however, has no application to this case because the record here shows that the first appeal was perfected although the defendant did not later file a transcript within the time allowed by law.

Hence, after the second appeal had been taken, there were in this case two appeals, both of which had been perfected and no order had been made dismissing the first appeal. There is no decision in this state holding that, under such circumstances, a second appeal can be

taken. In the Tucker case the court merely held that, after an appeal had been perfected in a criminal case and the appellant had failed to file the transcript within the time allowed through no fault of his own or of his attorneys, upon a proper showing of that fact, this court would dismiss the first appeal without prejudice to his right to take a second appeal, but the court did not hold that, without such showing and such order, the appellant, on his own motion, could ignore his first appeal and take a second appeal with the first appeal still pending and undetermined. In that case also the motion to set aside the first appeal was made before the statutory period for the taking of an appeal had expired. Here, the motion is made long after that time has expired.

If defendant's contention can be maintained in this case, then an appellant can take any number of appeals from the same judgment and not file his transcript until thirty days after the last appeal was taken, and all this without any showing of diligence upon his part and without any order of the court dismissing the appeals previously taken. Such a procedure is not authorized by the statute nor has it ever received the sanction of this court and is not supported by anything said in the Tucker case.

It has uniformly been held by this court that, under our statute, when an appeal has once been perfected, the right of appeal is exhausted and cannot be exercised a second time. This was held in *Schmeer v. Schmeer,* 16 Or. 243, 17 P. 864, a civil case, but the same ruling was followed and approved in *State v. Keeney,* 81 Or. 478, 159 P. 1165, a criminal case. That doctrine has been applied in numerous other criminal cases decided both before and after the Tucker decision

was rendered. The only exception to that rule recognized by this court is where the appellant, as in the Tucker case, was granted the right to take a second appeal under an order made by this court upon a proper showing and within the time fixed by the statute for the taking of an appeal. Hence, unless we are prepared to overrule *State ex rel. v. Estes,* 34 Or. 196, 51 P. 77, *State v. Williams,* 55 Or. 143, 105 P. 716, *State v. Dickerson,* 55 Or. 390, 106 P. 790, *State v. Douglas,* 56 Or. 20, 107 P. 957, *State v. Webb,* 59 Or. 235, 117 P. 272, *State v. Morgan,* 65 Or. 314, 132 P. 957, *State v. Keeney,* 81 Or. 478, 159 P. 1165, *State v. Keeney,* 82 Or. 400, 161 P. 701, *State v. Foster,* 140 Or. 200, 13 P. (2d) 609, and *State v. Fehl,* 147 Or. 290, 32 P. (2d) 1013, all of which were criminal and not civil cases, then this appeal must be dismissed, or a new rule must be established in contravention of every decision heretofore rendered by this court.

In *State v. Morgan,* supra, this court, at a time when Mr. Justice McBride, who wrote the opinion in the Tucker case, was Chief Justice, in a per curiam opinion in which all the then members of the court concurred, said:

"An appeal is a statutory remedy, and, in order for the defendant to have the benefit of an appeal, it is necessary for him to comply substantially with the requirements of the statute. After the expiration of the time allowed by the statute for filing copies of the documents required, neither the Circuit Court nor this court has authority to make an order *nunc pro tunc* extending the time, or to change the statute by granting a different right of appeal than as provided for by the statute: Kelley v. Pike, 17 Or. 330, 20 P. 685. In the case at bar the orders passed by the Circuit Court on January 25, and February 21, 1913, were made without authority of

law, and are void: Grover v. Hawthorne, 62 Or. 65, 71, 121 P. 804, 808.

The filing of the transcript within the time allowed by the statute, or within the time allowed by the court, when the time therefor is extended, is a jurisdictional matter. In criminal cases where the transcript is not filed within the five days provided by law, upon the motion of the respondent and notice to the appellant, this court has no discretion in the matter and must order the appeal dismissed: State v. Williams, 55 Or. 143, 105 P. 716; State v. Dickerson, 55 Or. 390, 106 P. 790; State v. Douglas, 56 Or. 20, 107 P. 957; State v. Webb, 59 Or. 235, 117 P. 272; Davidson v. Columbia Timber Co., 49 Or. 577, 91 P. 441.''

In the Morgan case the defendant had been convicted of the crime of murder in the first degree and he was attempting to appeal from said judgment. His failure to file the transcript within the five days then allowed by law grew out of the following facts stated in the opinion:

''It is shown by affidavit on behalf of plaintiff that on the day on which the notice of appeal was filed the circuit judge issued the certificate of probable cause. On account of the date set for the execution of defendant, January 16, 1913, one of the attorneys for defendant carried the certificate in person to the warden of the penitentiary, and returned to Condon on the 17th of January, 1913, with the intention of preparing a bill of exceptions, and of having the transcript filed in the Supreme Court within the time required by law, which time would expire on January 19, 1913. Not being able to complete the bill of exceptions, and the circuit judge then holding court at Pendleton, Oregon, one of the attorneys tried to communicate with the judge by telephone, for the purpose of obtaining an order extending the time for filing the transcript but was unable to do so. Upon the return of the circuit judge from Pendleton to Condon, after the expiration

of the five days in which to file the transcript, the judge signed such order. It is in no way explained why counsel for defendant did not communicate with the circuit judge by telegraph, or by some other means than the telephone; nor is there any explanation made as to why the order for the extension of time was not obtained at an earlier date during the five days' time, which, at most, is short for preparing and filing a transcript. It is clear that the transcript was not ready to be filed by the clerk; therefore it was no fault of the clerk that the same was not transmitted within the time allowed by law."

Notwithstanding the showing thus made, the motion to dismiss the appeal in the Morgan case was sustained.

There has been no change in the statute since the decision in the Morgan case except extending the time for filing the transcript from five to thirty days. If, as stated by the court, neither the supreme court nor the circuit court has the power by a *nunc pro tunc* order extending the time after the expiration of the time allowed nor to change the form of the appeal, then clearly the defendant himself, after default, by merely filing a second notice of appeal without any order being made setting aside the first appeal, has no such power. The statute grants but a single right of appeal and the law of this state is, as settled by the decisions of this court, that no second appeal can be taken where the first appeal has been perfected and the appellant has failed to file the transcript within the time allowed, except in the single instance where an order of this court is obtained, upon a sufficient showing, dismissing the first appeal without prejudice. The defendant does not come within that exception and the doctrine announced in the Tucker case has no application whatever to the facts presented here.

Under the decisions above referred to, the appeal should be dismissed.

KELLY, J., concurs.

---

Argued on the merits and submitted May 23; affirmed June 6; rehearing denied July 6, 1939

## ON THE MERITS
(91 P. (2d) 295)

In Banc.

Appeal from Circuit Court, Polk County.

ARLIE G. WALKER, Judge.

Albert Earl Rosser was convicted of arson and he appeals.

AFFIRMED.   REHEARING DENIED.

*George Mowry*, of Portland (George F. Vanderveer, of Seattle, Wash., and Charles W. Robison, Leland B. Shaw, and John Mowry, all of Portland, on the brief), for appellant.

*Bruce Spaulding*, District Attorney, of Dallas, and *Ralph E. Moody*, of Salem (Oscar Hayter, of Dallas, on the brief), for the State.

BELT, J.   The defendant Albert Earl Rosser was indicted, tried and convicted of the crime of arson and sentenced to imprisonment without limitation of time for a maximum term of twelve years in the penitentiary. From this judgment of conviction, the defendant appeals, assigning numerous errors.

The indictment charges that the defendant, on the 20th day of November, 1937, in Polk county, state of Oregon, did then and there "wilfully, maliciously and

feloniously set fire to and burn, in the night-time, a certain manufactory of another, namely, Salem Box and Manufacturing Company, an Oregon corporation, located near West Salem, in said County and State.''

14. There is no merit in the contention that the indictment is ''too vague, indefinite, and uncertain to inform the defendant of the nature and cause of the accusations against him.'' The indictment is drawn in the language of the statute (§ 14-302, Oregon Code 1930) and is, without doubt, sufficient.

The facts out of which this criminal action arose are, briefly stated, as follows: At the time in question, defendant Rosser was chief executive of the Teamsters' Union in the state of Oregon, which was affiliated with the American Federation of Labor. Rosser maintained his office in the Labor Temple in the city of Portland. He was secretary of Joint Council No. 37, in which delegates from the various local organizations throughout the state were represented. He was also secretary of the local Teamsters' Union No. 162. In July, 1937, defendant caused Albert Norman Banks to go to Salem, Oregon, to act as business agent of Teamsters' Local No. 324, of which Hugh Reynolds, residing at Eugene, Oregon, was secretary. At the time Banks came to Salem, the Salem Box and Manufacturing Company, employing 60 or 70 men, became involved in labor controversies. Soon thereafter a strike was called and the plant picketed by the Building and Trades Council of Salem with which the local Teamsters' Union was affiliated.

Banks testified that he first took up with Rosser in his office at Portland, on November 1, 1937, the labor trouble at the box factory in West Salem, and told him the ''only way you would ever deal with Salem

Box Factory would be to burn it down," that Rosser "decided that he would send some men down to do that," and that he (Banks) should pay them for the fire. In this conversation, according to Banks, Rosser told him to "pay them out of your slush fund" and make out checks covering such money expended payable to "organization."

Banks said he had a second conversation with Rosser at Portland concerning the box factory, about November 10, 1937, and the latter told him that "he had been intending to send them, but hadn't done it, but that he would do it right away."

Banks testified to a third conversation with Rosser over the telephone concerning the same subject. This occurred a "day or two * * * shortly before the fellows showed up." In this telephone conversation, Rosser, according to Banks, "again mentioned that he was unable to send those men down, but that he would do it right away."

On the morning of November 15, 1937, Ernest Carson, John Newland, and Cecil Moore—all members of the Teamsters' Union—came to Banks' office in Salem and said "they had been sent down from Portland." Banks, who had never seen these men before, told them that he "had talked to Rosser and that he was going to send the men down," whereupon they said, "Well, call him back and tell him that we are here and that we will take care of it."

Banks and the three men made no definite plans at this time concerning the burning of the mill but Banks said that he would see them on their return from California. Banks paid them $20 in currency due "Slim" Henderson for a "job" done by him in breaking the

window in the Golden Pheasant restaurant in Salem, which they appropriated to their own use.

Moore, Carson, and Newland proceeded to Eugene, Oregon, where it is said they contacted Hugh Reynolds, secretary of the Teamsters' Union. In Eugene, they broke some windows in a non-union barber shop (*State v. Reynolds*, 160 Or. 445, 86 P. (2d) 413), then drove on to Oakland, California. After a few days in California, they came through Eugene again on the evening of November 18, 1937, and smashed the windows of the barber shop a second time in order to be ''sure of doing a good job.''

The three men arrived in Salem the next morning (Friday, November 19) and went directly to the office of Al Banks. After talking the situation over, Banks and the three men drove out to West Salem where Banks pointed out the factory to be burned. After another payment of $10 in currency was made to them by Banks, the three men returned to Portland. Shortly after midnight they came back and set fire to the mill which was totally destroyed at a loss of approximately $90,000. Carson, Moore, and Newlands thereupon went back to Portland. In a day or two after the fire, Carson and Newlands came to Salem to see Banks about being further paid for the job. Banks paid them an additional $75 in currency—aggregating $105 for the job—but they were not satisfied. Banks said he told them he would take it up with Rosser and ''if he said it was okey to pay them more money, that I would pay them more, but otherwise I didn't feel like I could.'' Carson and Newland returned to Portland and divided with their co-conspirator in crime, Cecil Moore.

It is well at this juncture to note the particular part that each of these accomplices played in this crime.

Newland poured the gasoline on the lumber in the box factory; Moore lighted the match and ignited the gasoline; and Carson waited in the automobile near the mill in order to drive his associates away from the scene of the crime after the fire had been started. Cecil Moore was a convict from San Quentin who had been sentenced to serve 7½ years for robbery. After being confined for four years, he was paroled to Clarence Adams, "boss" of the Teamsters' Union hiring hall at Portland. Moore joined the Teamsters' Union but was not required to pay any initiation fee or dues. At the time of trial he admitted having pleaded guilty to four felonies and two misdemeanors pertaining to lawless labor activities. Banks paid the men to do the "job"— men who, he says, were sent to him by the defendant Rosser.

Banks was arrested, on the 7th day of February, 1938, for participation in the crime of burning the factory, and shortly after confessed his guilt thereto. He pleaded guilty and was sentenced to serve a term of 12 years in the penitentiary. Moore, Newland, and Carson also confessed and pleaded guilty to the same crime. Hence, in this case there are four self-confessed accomplices—Banks, Moore, Newland, and Carson.

Banks, in his written confession and in his testimony before the grand jury on two occasions, said that Rosser was not implicated in the crime but that it was Clarence Adams who sent the three men to him. In this trial Banks admitted that he lied and perjured himself to save Rosser. It was only after Banks had been sentenced and imprisoned in the penitentiary that he decided, as he says, "to come clean" and tell what he knew about Rosser. Moore, Carson, and Newland all testified that they were not sent to Salem by Rosser to

see Banks and that Rosser had nothing whatever to do with the commission of the crime.

It is believed that the above statement of the case is sufficient to comprehend the legal questions presented on this appeal. It is the theory of the State that Rosser, Banks, Moore, Newland, and Carson were engaged in the execution of the same common design—namely, the burning of the Salem Box Factory in order to compel its owner to unionize the plant. It is not contended by the State that Rosser had any part in actually starting the fire, but that he procured the three men who came to Salem for the purpose of setting fire to the factory. In other words, it was Rosser who was the guiding spirit in this criminal enterprise and the fire in question was merely a part of the common plan of doing violence to employers who would not accede to the demands of the union. The defendant, through his counsel, conceded in the trial in the circuit court and on this appeal that the four accomplices above named participated in the commission of the crime charged in the indictment, but at all times has maintained that he had nothing whatever to do with it.

The motion for a directed verdict presents the vital question as to whether there is any evidence, aside from that of the accomplices, tending to connect the defendant Rosser with the commission of the crime as charged in the indictment. Such motion is in the nature of a demurrer to the evidence. It admits the truth of the evidence as disclosed by the record and every reasonable inference that might be drawn therefrom. When different reasonable inferences can be drawn from the evidence, the question is one exclusively within the province of the jury. It is not the function of the court to substitute its judgment on questions of fact for that

of the jury. Therefore, in considering this assignment of error, the record must be viewed in the light most favorable to the State. We are not to be concerned with the weight of the evidence nor with the conflict of testimony.

Under the common law conviction may be had on the uncorroborated testimony of an accomplice, but such is not the rule in this state as the matter is controlled by statute. Section 13-935, Oregon Code 1930, provides:

"A conviction can not be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime, and the corroboration is not sufficient if it merely show the commission of the crime, or the circumstances of the commission."

The above section has been many times considered by this court. (See cases reviewed in *State v. Reynolds,* supra). We see no need for repetition. The language of the statute is so plain and unambiguous that there has been slight need for construing it. Any difficulty experienced has been not in the statement of the law but rather in its application to a particular factual situation.

It is well settled in this jurisdiction that, when the objection that there is no corroborative evidence tending to connect the defendant with the commission of the crime is made, the legality of the verdict must be tested in the light of the strongest statement of the case against defendant that can reasonably be made from the evidence: *State v. Reynolds,* supra; *State v. Young,* 140 Or. 228, 13 P. (2d) 604; *State v. Brazell,* 126 Or. 579, 269 P. 884. It is not necessary that the corroborative evidence be direct and positive. It may

be circumstantial in character: *State v. Brazell*, supra; *People v. Mayhew*, 150 N. Y. 346, 44 N. E. 971. All the statute requires is that, in addition to the testimony of the accomplice or accomplices, there be some evidence, however slight, tending to connect the defendant with the commission of the crime.

In the light of the above legal principles, we turn to the record to ascertain whether there is any evidence, separate and distinct from that of the accomplices, which, taken by itself, tends to connect the defendant with the commission of the crime.

■ David Rutz, who is not an accomplice, testified that he was employed by Rosser as business agent and "outside agent" of the Teamsters' Union Local 162 and that he retained such position—working under the direction of Rosser—until February 25, 1938, when he was arrested for a crime of which he was convicted and sentenced to imprisonment in the penitentiary. Rutz further testified that he was in the office of Rosser in Portland, "Sometime the fore-part of December, last year (1937)" when Banks entered saying, "You are after money, too, are you?" Rutz states that Banks added, "I am after money this morning * * *. Those stooges * * * want more money," and that "Al Rosser says, 'How much did you pay them?' Banks says, 'One hundred five dollars.' Rosser said, 'That's enough for the bastards,' * * *. So then Banks said, 'Well, I don't know what would be right on it. What you would call enough.' And then Rosser said, 'I guess they done a pretty damn good job, didn't they?' And Banks said, 'Yes, it was a — it was a hot place. Got so hot it even curled up the railroad tracks.' Then Rosser said * * * *I'll call Clarence Adams and see what we can do about paying them some more money.'*

I asked the question what fire they was talking about. And one or the other of them said, 'That box factory fire at Salem. Haven't you been reading the papers?' " (Italics ours.)

■ In our opinion, this evidence, if believed, clearly connects the defendant Rosser with the crime charged. Rutz' veracity was solely a matter for the consideration of the jury. There are other facts and circumstances to which we might allude as corroborative evidence, but we think the above is sufficient to show that no error was committed in denying a motion for a directed verdict of acquittal. We are unable to agree with counsel for defendant that the testimony of Moore, Carson, and Newland refutes, as a matter of law, the evidence of Banks that Rosser was implicated in the crime charged. All this testimony came from a polluted source and it was for the jury to determine who was telling the truth.

Error is assigned on account of the giving of the following instruction to the jury:

"Aiding and abetting is intentionally giving assistance to the actual perpetrator of the crime before, *after,* or during its actual commission." (Italics ours.)

Exception was taken to the above instruction by reason of including therein the word "after", since it submitted to the jury the issue as to whether defendant was guilty as an accessory after the fact, whereas he was charged in the indictment with being a principal.

■■ Section 13-724, Oregon Code 1930, abrogates the distinction between an accessory before the fact and a principal by providing that:

"The distinction between an accessory before the fact and a principal, and between principals in the

first and second degree, in cases of felony, is abrogated, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the crime, or aid and abet in its commission, though not present, must hereafter be indicted, tried, and punished as principals, as in the case of a misdemeanor.''

The words "aid and abet" as used in the above section abolishing the distinction between an accessory before the fact and a principal, whether they directly commit the act constituting the offense or aid and abet in its commission, though not present, manifestly have reference to some word or act of encouragement or assistance in the commission of the offense, and not to something done after the crime is complete. In other words, an accessory after the fact is not an aider and abettor under the above section of the statute: *State v. Jones,* 115 Iowa 113, 88 N. W. 196. An "aider and abettor" is one who advises, counsels, procures, or encourages another to commit a crime, though not personally present at the time and place of the commission of the offense: *State v. Silverman,* 148 Or. 296, 36 P. (2d) 342.

Relative to accessories after the fact. Section 14-1003, Oregon Code 1930, provides:

"All persons who, after the commission of any felony, conceal or aid the offender, with knowledge that he has committed a felony, and with intent that he may avoid or escape from arrest, trial, conviction, or punishment, are accessories.''

There is no evidence in the record from which it could reasonably be inferred that the defendant was an accessory after the fact. The theory of the State is that he aided and abetted in the commission of the crime by procuring Moore, Newland, and Carson to set fire

to the factory. We think, however, that the error in the instruction by reason of including the word "after" was harmless in view of the charge to the jury in its entirety. Relative to this phase of the case, the court instructed that:

"* * the mere knowledge, acquiescence, silence, or consent, would not justify a conviction. Nor would a mere approval of the act justify a conviction. But there must be a positive act on the part of the defendant in the aid of the commission of the offense. So, in this case, if you find that this defendant did have knowledge that the crime was to be committed, or had been committed; or that he acquiesced in the commission of the same; or that he had knowledge of the same and remained silent; or that he approved of the commission of the crime, either before or after its commission; or that he consented to the same, but did not actually aid and abet in the commission of the crime as I have defined these words for you, you should not convict him."

The above instruction refutes the idea that the jury might have been misled as to whether the defendant could be convicted as an accessory after the fact.

██ No error was committed in refusing to give the following requested instruction:

"* * In the case at bar, also, the defendant is not accused of having assisted Al N. Banks, John Newland, Ernest Carson, or Cecil Moore, or any of them, to escape arrest or punishment after the arson had been completed. And I instruct you, therefore, that even though you might believe beyond a reasonable doubt that the defendant did render such assistance, still it would be your duty, under the evidence in this case, to find him Not Guilty, because, as I have stated, that is not the offense with which he is charged in this indictment and he cannot be convicted of that offense in this trial."

The above instruction is abstract in that there is no evidence that the defendant acted as an accessory after the fact. It is further erroneous in that it calls for a verdict of not guilty even though it be established that defendant aided and abetted the commission of the crime. This requested instruction invited error instead of clarifying the issues as contended by the defendant.

It is urged that the court erred in refusing to strike the following testimony of Banks, witness for the State, on direct examination:

"* * He (Dave Beck) said he remembered on one occasion, he said, 'This is a broad statement to make, but', he said, 'I know I am talking to a bunch of men I can trust. I feel sure of it.' He said, 'I know of one occasion where that a large sum of money changed hands with two men on the street. No one was any the wiser and this was in a criminal case', and he said, 'that no one was any the wiser and that the main witness never showed up for the trial.'"

The above statement, according to Banks, was made by Dave Beck at a meeting of Joint Council 37 in Portland in September or October, 1937, at which time there was under discussion various complaints by members of the union against Rosser on account of inability to ascertain from his books what the money of the union "was spent for." Dave Beck was "International Organizer" of the Teamsters' Union, having control and supervision of such work in eleven states, including Oregon. He was speaking in defense of Rosser's policy of accounting for the expenditure of union funds. Beck further said, according to Banks, "* * in order to be a thriving organization what all you must to do— you had to trust the executors that was in power of the money. Why, there shouldn't be any questions asked."

Rosser was present and it is reasonable to infer that he heard what Beck, his superior officer, had to say about such matter. It is recalled that Banks testified that Rosser instructed him to mark the word "organization" on certain checks where money had been expended in "organization work." Such was the method followed by Banks covering the $105 in currency paid by him to Moore, Carson, and Newland, as shown by checks received in evidence.

■ It is contended by the defendant that this evidence was highly prejudicial in that it indirectly implicated Rosser in a crime not charged in the indictment. In this statement of Beck, there was no intimation that Rosser had committed any crime. It merely indicated a declaration of policy which tended to support the theory of the State of a common plan, in which defendant participated, to cover up the illegal expenditure of funds. We think the evidence was admissible. What has been said applies equally to the assignments of error in reference to the talk of Bill Blackwell at this meeting when Rosser was present. It all tends to show, if believed, how a few "racketeers" were willing to prostitute the cause of organized labor by resorting to crime and violence: *State v. Gillis,* 154 Or. 232, 59 P. (2d) 679.

On direct examination, Cecil Moore, witness for the State, was asked whether Rosser had ever paid him any money and he replied that he had not. For the purpose of refreshing his memory, the witness's attention was directed to a written statement made by him relative to a check in his favor for $50, dated October 5, 1937, and drawn by A. E. Rosser. Moore admitted receiving the check, given as he says for "picket duty", but still insisted that he had not received the money from

Rosser. There is evidence that Jack Estabrook, at the direction of Rosser, paid Moore $50 in cash and took up the check.

Error is assigned because of receiving the check in evidence and in questioning witness concerning payment of money. Moore was a reluctant and unreliable witness. The State had the right to contradict him as above stated: Sec. 9-1909, Oregon Code 1930. It is true that the check, having been issued about six weeks before the fire, had slight bearing on the issues of this case, but it is entitled to go to the jury for what it was worth as tending to show the defendant's association and dealing with the accomplice Moore. There is slight merit in the contention that the check and the questions in reference to it were prejudicial to the rights of the defendant. It is true that the defendant's association and dealing with Moore did not reflect much credit upon him but the moral is obvious.

Defendant assigns error because the bail of the defendant was fixed in the sum of $100,000. No application was made to the trial court to reduce bail until after judgment of conviction, whereupon it was reduced to $25,000. We fail to see wherein the amount of bail required has any bearing upon the question of defendant's guilt.

It is urged that the court erred in denying defendant's motion for the return to him of a large number of documents, letters, and records seized by the officers at the time he was arrested in his office at Portland on February 8, 1938. None of these various papers or documents was offered in evidence excepting the check for $50 drawn by Rosser in favor of Moore. It is contended that defendant was thus deprived of the use of these documents and papers in his defense and that

they were seized in violation of the "statutes and section 9 of Article I of the Constitution of Oregon."

At the time this arrest was made the officers were armed with a warrant. It was a lawful arrest. The seizure of the documents and papers not owned by the defendant was incidental to the arrest. As stated in *State v. Laundy*, 103 Or. 443, 204 P. 958:

"The right of the arresting officer to seize articles of evidentiary value is not confined to the right to search and take property from the person of a prisoner. Stated broadly, the general rule is that the arresting officer may at the time of making the arrest lawfully take articles in the possession or under the control of the prisoner, if they supply evidence of guilt." Citing numerous authorities.

Also see: *State v. Walker*, 135 Or. 680, 296 P. 850; *Keeler v. Myers*, 119 Or. 517, 249 P. 637, and cases in note 74 A.L.R. 1388.

Defendant contends that the indictment against him was returned "wholly without authority of law" in that there was not before the grand jury any evidence tending to connect him with the commission of the crime charged therein. We know not from the record before us what evidence was before the grand jury for consideration. No motion was made in the trial court to annul the indictment. The question, therefore, is not here for review. See *State v. Slim and Wolfe*, 141 Or. 174, 17 P. (2d) 314, and cases therein cited.

It is urged that the Constitutional rights of the defendant have been violated by depriving him of "due process of the law" and "equal protection of the law." In our opinion, there is no merit in this contention.

This record of crime and violence is revolting to every right-thinking and law-abiding citizen. It in no

manner reflects the true purpose and spirit of organized labor, but rather the lawless activities of a few "gangsters" who would prostitute its cause. The defendant has been represented by able counsel and has had a fair and impartial trial. There is no error in the record warranting a reversal.

The judgment of the lower court is affirmed.

LUSK, J., not sitting.