Argued May 11, affirmed August 14, 1962

# STATE OF OREGON *v.* CAIN
373 P. 2d 1004

*Ralph W. G. Wyckoff,* Salem, argued the cause for

appellant. With him on the brief was Arthur G. Kaplan, Portland.

*Gary D. Gortmaker,* Deputy District Attorney for Marion County, argued the cause for respondent. On the brief was Hattie Bratzel Kremen, District Attorney for Marion County.

Before McALLISTER, Chief Justice, and WARNER, PERRY and SLOAN, Justices.

PERRY, J.

James H. Cain was convicted of the crime of receiving and concealing stolen property. From this judgment of conviction, he appeals.

Errors are assigned on the failure of the court to grant his motion for a directed verdict of acquittal on the basis that there was no evidence of his guilt, save the testimony of an accomplice, and further, that the evidence failed to show that the crime with which he was charged was committed in Marion County, Oregon. He also assigns error on the failure of the court to grant his motion for a mistrial because the jury could have read a newspaper article which was highly prejudicial to the defendant.

There is uncontradicted evidence that on the night of April 9, or in the early morning hours of April 10, 1961, the Pepsi-Cola Bottling Company in Salem, Marion County, Oregon, was burglarized. Some of the items taken from the Pepsi-Cola Company were blank checks of the company, and a check protector. Some of the blank checks were forged and uttered in Portland, Multnomah County, Oregon. In forging these checks the check protector taken in the burglary

was used. The check protector was later recovered in Multnomah County.

The evidence indicates that five people had knowledge of the burglary and had joint possession of the checks and check protector taken in the burglary. They are the defendant Cain, one Joe Bowers, Darrell Christensen, Jack Oster, and a Mrs. Josette Forkner. Mrs. Forkner, a reluctant witness, who the state admits was an accessory to the crime charged, testified as follows:

That she and Jack Oster were visiting her friend, a Miss Elders, in Miss Elders' apartment in Salem in the early morning hours, about 4 to 4:30 a.m. of April 10, when they were joined by the defendant Cain, Bowers and Christensen. That shortly after Cain, Bowers and Christensen came to Miss Elders' apartment, the defendant, Joe Bowers, Darrell Christensen and Jack Oster and herself drove to Portland in the Bowers automobile. That enroute to Portland the Pepsi-Cola burglary was discussed, and Joe Bowers mentioned that he had difficulty in opening the company's safe. She also recalled they discussed the fact that footprints had been made which led from the Pepsi-Cola plant in the direction of the home where the defendant lived. She further testified that the group drove to the Horseshoe Motel in Portland where some of the men went into the motel office and registered for the entire group; that at the motel she saw the defendant using the check protector in forging the blank checks of the Pepsi-Cola Company. She also testified that while the defendant and Bowers waited in the automobile, she accompanied Oster to the grocery store of one B. G. Moore, where Oster uttered one of the stolen checks which had been forged.

A few days later the entire group was arrested, and Miss Forkner led the officers to where the check protector had been hidden in some bushes.

Mrs. Henry Beck, the proprietor of the Horseshoe Motel in Portland, called as a witness, testified that four boys and one girl stayed in her motel on April 10. She identified Oster and Mrs. Forkner. She further identified the motel registration card which was signed "James Henry Cain." She also testified that the car they were driving was a Mercury, and testified to the license number, which was the license number of the car driven by Joe Bowers.

The defendant stipulated that it was his signature on the motel registration card.

B. G. Moore, a merchant in Portland, Oregon, who was called as a witness, identified the purported Pepsi-Cola check made out for $118.41 which he had cashed, and which had been returned by the bank. He further testified that Oster, in the company of Mrs. Forkner, were the parties who came into his store and cashed the check.

Miss Jean Elders testified that Oster and Mrs. Forkner were in her apartment between midnight of April 9 and in the early morning hours of April 10; that at some time about 4 or 4.30 a.m. of April 10, the defendant Cain, Bowers, and Christensen, came to the apartment; that shortly thereafter the five visitors left her apartment and did not return that night or the days following.

The officer who investigated the burglary of the Pepsi-Cola plant testified that he found footprints leading from the plant across a vacant lot in the direction of where the defendant lived with his sister, a Mrs. Higuira.

It must be conceded that the testimony of Mrs. Forkner, if sufficient in itself under the law, established the defendant's guilt. Since, however, Mrs. Forkner was an accomplice to the crime, the defendant relies upon ORS 136.550, which provides:

> "A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the commission of the crime. The corroboration is not sufficient if it merely shows the commission of the crime or the circumstances of the commission."

He then argues there is insufficient evidence to corroborate the testimony of the accomplice.

This statute was construed in *State v. Brake,* 99 Or 310, 195 P 583, and has since been applied in many Oregon decisions. The statute is fully discussed by Mr. Justice LUSK in *State v. Reynolds,* 160 Or 445, 86 P2d 413.

It is pointed out in *State v. Reynolds,* supra, that evidence independent of the testimony of the accomplice need not of itself be adequate to support the conviction, but it must fairly and legitimately tend to connect the accused with the commission of the crime with which he is charged.

■ In considering the motion for a directed verdict of not guilty, the question to be answered is whether there is any evidence other than that of accomplices, tending to connect the defendant with the commission of the crime charged in the indictment. If the evidence aside from that of the accomplices is sufficient that the jury may draw a reasonable inference that the defendant could be guilty of the crime charged, then the facts must be resolved by the jury and not the court. *State v. Duggan,* 215 Or 151, 333 P2d 907;

*State v. Rosser,* 162 Or 293, 86 P2d 441, 87 P2d 783, 91 P2d 295.

From the testimony above set out, independent of the testimony of Mrs. Forkner, we have these facts: (1) The Pepsi-Cola Company was burglarized and blank checks and a check protector were taken; (2) footprints were found leading from the scene of the burglary in the direction of the defendant's home; (3) the defendant and Bowers, Christensen, Oster and Mrs. Forkner were together in the early hours of the morning of the burglary in Salem, Oregon; (4) this same group and the defendant were in Portland in a motel on April the 10th; (5) a blank check which had been forged and on which the check protector had been used was uttered by one of this group in Portland, Oregon.

■ It is pointed out in the cases above cited that the corroborative evidence need not be direct, but it is satisfactory if the evidence is entirely circumstantial; intimate association with the accomplice at or about or during the commission of the crime often being sufficient in itself. *State v. Brake,* supra.

■ Clearly, reasonable minds could draw the inference, that since the defendant was in the company of the accomplice Forkner, who knew about the burglary, on and at a time when the fruits of the crime of the burglary were being used to defraud the merchant, that he was in possession of the articles stolen or taken in the burglary of the Pepsi-Cola Company. It is not necessary to establish the defendant personally received and concealed the property; it is only necessary to show that he aided and abetted in that crime. ORS 161.220.

As to the defendant's contention that there is no evidence that he received and concealed the stolen

property in Marion County, it is clear to us from the fact that the checks and check protector were taken in Marion County; that the defendant lived in Marion County, and that he left Marion County in the company of those who used the fruits of the burglary to defraud in Multnomah County, that reasonable minds could draw the inference that he had possession of and was concealing the stolen property in Marion County, Oregon.

■ The defendant's contention that the trial court erred in failing to sustain his motion for a mistrial and dismiss the jury is based on the fact that on the morning of the day the case was submitted to the jury, a local newspaper carried a news item of the trial which contained the statement that the defendant had been convicted of another crime, and had been sentenced to life imprisonment. From the record it appears the published article was called to the court's attention and the motion made after the last witness had testified and just prior to the noon recess. The defendant made no request to have the jury polled to determine whether or not any had read the article that had appeared in that morning's paper. Insofar as the record is concerned, we would be required to assume the jurors or some of them, had read the paper, before we could presume to determine whether or not there could be prejudice. Thus, since there is only a possibility that any of the jurors read the article, we are not in any position to say there is a probability of prejudice to the defendant.

The trial judge, after the matter was called to his attention and before excusing the jury for the noon recess, instructed the members of the jury not to read the newspaper and also to remember that the case against the defendant was to be tried and determined

upon the evidence offered in the court room, not what may be heard or rumored outside.

To sustain the defendant's contention we would have to assume the jurors read the article and also assume they violated their oaths and disobeyed the court's instructions. "This we cannot do." *State v. Langley,* 214 Or 445, 323 P2d 301.

We have carefully examined each of the defendant's assignments of error, and finding no error therein, the judgment of conviction is affirmed.