UNITED STATES v. VAN LEUVEN.

(District Court, N. D. Iowa, E. D. December 14, 1894.)

1. CRIMINAL LAW—TESTIMONY OF ACCOMPLICE.
   It is proper for the judge, upon the trial of a person indicted for a criminal offense in a court of the United States sitting in a state the statutes of which forbid the conviction of a defendant upon the uncorroborated testimony of an accomplice, to instruct the jury that they cannot find the defendant guilty upon such testimony.

2. SAME—CORROBORATION.
   In determining whether or not the testimony of an accomplice is corroborated by independent testimony, the fact that a witness, who gives testimony claimed to be corroborative, is himself charged with a similar offense, does not destroy the corroborative effect of his testimony, if he was not concerned in the particular offense with which the defendant stands charged.

Trial upon an indictment charging that the defendant had conspired, with one Rankin, contrary to the provisions of section 5440 of the Revised Statutes of the United States, to offer or give to the members of the board of examining surgeons at Cresco, Iowa, money for the purpose of influencing the official action of the board in regard to the examination to be made of Rankin as an applicant for an increase of pension. Trial before a jury. Verdict, "Guilty."

M. D. O'Connell and Cato Sells, U. S. Dist. Atty., for the United States.

John Day Smith and W. W. Erwin, for defendant.

SHIRAS, District Judge (orally charging jury). Before passing to the consideration of the special questions that are involved in the charge in this case and that are to be submitted to you for your decision, I deem it advisable to briefly call your attention to some general provisions of the statute and general provisions of law that you should bear in mind when you come to decide the case after its final submission to you. By the provisions of section 5451 of the Revised Statutes of the United States it is enacted by congress that "every person who promises, offers or gives, or causes or procures to be promised, offered, or given, any money or other thing of value, or makes or tenders any contract, undertaking, obligation, gratuity, or security for the payment of money, or for the delivery or conveyance of anything of value, to any officer of the United States, or to any person acting for or on behalf of the United States, in any official function, under or by authority of any department or office of the government thereof, or to any officer or person acting for or on behalf of either house of congress, or of any committee of either house, or both houses thereof, with intent to influence his decision or action on any question, matter, cause, or proceeding, which may at any time be pending or which may by law be brought before him in his official capacity, or in his place of trust or profit, or with intent to influence him to commit or aid in committing, or to collude in, or allow any fraud, or make opportunity for the commission of any fraud on the United States,"—commits an offense against the United States, punishable in accordance with the provisions of this section. As you well know, the laws of the United States provide for the payment of pensions, under given circumstances, to those who may have been soldiers or sailors in the army or navy of the United States in the different wars in which this country has been engaged, and more particularly in that known as the "War of the Rebellion." For the purpose of properly controlling the matter of the payment of these pensions, there is an office of the government known as the "Pension Office," or "Pension Bureau." At the head of this office there is a person appointed by the president of the United States, under the provisions of the law, which officer is known as the "Commissioner of Pensions." He acts, in that capacity, as a person at the head of an office of the government of the United States, and upon him is conferred the authority, by acts of congress, to appoint proper persons to act as examining surgeons,—to form "examining boards," as they are termed. And upon these examining boards, or the surgeons who compose the same, is placed the duty of examining into the physical condition of the applicants for pensions, or for increase of pensions, who may be ordered to come before them for examination. The surgeons composing these boards are, therefore, persons "acting for and on behalf of the United States" in an "official function," under and by authority of the government, within the meaning of this section of the statute that I have read in

your hearing. Therefore if any person "promises, offers, gives, or causes or procures to be promised, offered, or given any money or other thing of value" to a board of examining surgeons, or any member thereof, with intent to influence the decision or action of the board, or members thereof, on any question or matter submitted to their examination, and decision,—as, for instance, to influence the action of the board of surgeons in regard to an examination that they may, under the law, be required to make, in regard to the certificate they may be required to make of the results of the examination,—that person commits an offense against the United States, in that he violates the provisions of the section that I have read in your hearing. It is furthermore provided by section 5440 of the Revised Statutes of the United States that, "if two or more persons conspire to commit any offence against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy," such persons commit an offense against the United States, and are punishable as set forth in this section. Therefore, under these two sections, if two or more persons conspire together for the purpose of offering or giving, or procuring to be offered or given to any board of examining surgeons, or to any member thereof, any sum of money, for the purpose of influencing the action of the board of surgeons touching any examination that such board may be required to make of any applicant for a pension or for an increase of pension, they violate the provisions of section 5440, provided it appears that either one of the parties to the conspiracy does some act to carry into effect the conspiracy or concerted action that they may have agreed upon.

Now, for the purpose of this case, and without attempting an exhaustive definition of what is a conspiracy, it is sufficient for me to describe a conspiracy to be a combining between two or more persons for the purpose of committing, by means of their concerted action, some unlawful act; and when one or more of the parties to the conspiracy commits or does some act to carry into effect the purpose of the conspiracy, the offense, if it be against the United States, is complete, under the provisions of the section I have read. It is not necessary to prove that the two or more parties have come together, and in set phrase have agreed that they will do thus and so, but it is sufficient to find that a conspiracy has been entered into, if the testimony shows that an agreement has been reached, and that, in pursuance of this concerted action, some act in furtherance of the conspiracy has been done. I may say—as has been said in your hearing—that at the common law a conspiracy could be made out by simply showing that an agreement had been reached by the parties that an offense was to be committed, but under the statutes of the United States it is necessary that an act to carry into effect the conspiracy should be done, in order to complete the offense. It has seemed wise to congress to provide or require, before parties shall be punished for the offense of conspiracy,—of conspiracy to commit an offense against the United States,—that it be more than a mere agreement; that it be proven that the parties charged with the of-

fense have put the conspiracy into operation by doing some act for the purpose of carrying it into effect. But the act that is required to be done under the statute need not be shown to be the completion of the offense; that is not necessary. For instance, if it be charged that two persons conspire to influence the action of a board of examining surgeons touching application for pension, it is not necessary to show in fact that money was corruptly paid to the board. If two or more parties conspire together to do that, and then they do something to carry the agreement into effect, that would be sufficient, under the statute, without showing that the offense was completed by their actually bribing or corrupting the board of surgeons. It is a settled principle of the law that every person charged with the commission of a crime is deemed and held to be innocent until he is proven guilty, and that presumption of innocence attends him during the entire trial, and until the evidence satisfies the jury beyond a reasonable doubt of his guilt. It is a rule of law, before the government is entitled to a conviction, that his guilt should be proven, beyond a reasonable doubt. After considering the entire evidence that may be submitted to the jury, giving the evidence the weight it is entitled to, and viewing it in all its relations, if there still remains a reasonable doubt of the defendant's guilt, then the duty of the jury is to return a verdict of not guilty. At the common law, as the same existed in England, in the progress and development of that law the conclusion was reached by the judges charged with the duty of presiding over trials of criminal cases that it was unwise for a jury to convict a person upon the uncorroborated testimony of an accomplice, and therefore judges cautioned the juries in this particular, and charged them that it was unwise for the jury to convict upon the uncorroborated testimony of an accomplice. In the state of Iowa it has been enacted as a provision of statutory law that no person shall be convicted of a crime upon the uncorroborated testimony of an accomplice, but there must be corroborative testimony tending to connect the defendant with the commission of the offense. I have always deemed it my duty as a judge of a court of the United States, and trying cases arising in the state of Iowa, and where the defendant is a citizen of this state, to say to the jury that they cannot convict upon the uncorroborated testimony of an accomplice; and when a case stands before a jury on that kind of evidence alone I assume the duty of charging them to return a verdict of not guilty, but, if the testimony of an accomplice is accompanied by evidence tending to corroborate the same in its material statements, then it is the duty of the court to submit the whole to the jury, and it is for the jury to determine whether the corroborating evidence is of such a character and weight as justifies the jury in giving weight to the testimony of the accomplice.

It may be advisable for me to state briefly the reason that underlies the general rule of law in regard to the testimony of an accomplice. If two or more parties are placed upon trial for some offense laid to their charge, and one of them is called as a witness for the prosecution, and is thus made use of as a witness against his code-

fendants, there is always present to the mind of that person the belief or understanding that if he testifies on behalf of the government he may be freed from prosecution, or escape punishment. Therefore it is that we give to juries the charge that a conviction should not be based upon the uncorroborated testimony of an accomplice, because he gives his testimony under the influence of the motive named. When, however, in a given case, there is evidence tending to corroborate the testimony of the accomplice in its material points, and to connect the defendant with the commission of the crime charged, then, as already stated, it is for the jury to determine whether the corroborating evidence is such as to justify them in considering and giving any weight to the testimony of the accomplice. If the corroborating evidence is such that the jury feel justified in considering and weighing the testimony of the accomplice, then, in determining the credibility of the witness, and the weight, if any, of his testimony, the jury should take into consideration all the facts and circumstances proven in the case which throw light upon the situation of the witness, and tend to show the motives and influences affecting his testimony,—such as the question whether an indictment is in fact pending against the witness, or whether a prosecution is threatened or not, and whether the witness is or is not endeavoring to escape punishment by aiding to convict his accomplice. All such matters, as well as the demeanor of the witness, his mode of testifying, and in brief all matters appearing in the case which throw light upon the situation and character of the witness, are to be considered in determining the credibility of an accomplice called as a witness on behalf of the government.

In this particular case now on trial before you the charge is contained in the second count of the indictment. As you understand, the indictment originally contained two counts, but at the beginning of the case the government was required to make its election upon which count to go to trial, and in the exercise of this option the government chose to proceed upon the second count of the indictment, and this is the only one before you. You will, therefore, at the outset disregard the matters contained in the first count of the indictment. The second count has been read in your hearing, and, very briefly stated, it is sufficient for me to say that it charges that on or about the 15th day of May, 1892, the defendant and one John Rankin conspired to commit an offense against the United States in this: That the defendant conspired with said John Rankin for the purpose of offering money to influence the action of the board of surgeons at Cresco, in the county of Howard, in this state, the examining board appointed for the purpose of examining applicants for pensions and increase of pensions under the law of the United States. It is further charged that, the conspiracy having been entered into for that purpose, an act tending to accomplish the object of the conspiracy was performed, in that the said Rankin paid to George M. Van Leuven $15 for that purpose, and that Van Leuven received the same for that purpose. It is not in dispute that John Rankin was an applicant before the pension office of the United States; that he had

been a soldier in the army of the United States; that he had made application for increase of pension; that his agent or attorney was George M. Van Leuven, the defendant in this case. It is not in dispute before you that there was a board of surgeons appointed, under the authority of the commissioner of pensions and under the provisions of the statutes of the United States, at Cresco, for the purpose of examining such persons as might be ordered before them touching applications for pensions or increase of pensions. It is not in dispute before you that the applicant, Rankin, was ordered to go before that board at Cresco, for the purpose of being examined. There has been evidence introduced on behalf of the government showing that Rankin proceeded to Cresco on the day named in this indictment, for the purpose of being examined by the board at Cresco. There has been evidence introduced tending to show that at Cresco, at that time, the defendant was present; that these parties met or came together, or at least were present together, in the rear room of a drug store in Cresco, and in the immediate vicinity of the office or place where the board of surgeons met for the purpose of conducting the examination of the persons who came before them. There has been evidence introduced tending to show that there were present at that time the defendant, Van Leuven, and Rankin, and another applicant for pension, one George E. Allen. On behalf of the government it is claimed that at that interview, or at the time the parties were together in this waiting room, an agreement was then and there reached between Rankin and Van Leuven, in completion of a prior talk or understanding between them, whereby they agreed together that the effort would be made to offer or pay money to this board of examiners, and that in pursuance of that arrangement, then entered into, $15 was paid to the defendant, Van Leuven, by said Rankin. This is denied by the defendant. Here we reach the pivotal question in this case, and upon the determination of which by you depends the verdict you should render. In the first place, the government has introduced Rankin as a witness to testify as to what his understanding was of the acts that were done, and what transpired at that interview at the time I have named. Now comes up the question, therefore, of the weight, if any, that is to be given to the testimony of Rankin. He stands here before you an accomplice, if it be true that a conspiracy was entered into between him and Van Leuven. If there was no other testimony in the case save that of Rankin, and there was no corroboration of that, it would be my duty, as I have explained to you, to charge you that upon the uncorroborated testimony of Rankin the government could not receive a verdict at your hand. The government has, however, introduced testimony which, it claims, corroborates that of Rankin. The evidence therefore goes before you for your consideration. Now, as I have already said to you, that testimony in corroboration, if any such there be, must be testimony that tends to connect the defendant with the commission of the offense that it is averred was committed. The government has introduced the testimony of George E. Allen, who testifies that he was present at the time of the interview, and you have heard his testimony in regard to what transpired. It is claimed that he also stands in the po-

sition of an accomplice, and therefore his testimony cannot be relied upon in corroboration of the testimony of the accomplice Rankin. The charge that you are investigating and trying in the case is that there was a conspiracy between Van Leuven and Rankin. Does the evidence of any of the witnesses who have testified to the interview that took place in that waiting room show, or tend to show, that Allen was there, agreeing with or conspiring with or in any manner aiding Rankin, in regard to his claim for pension? Had he anything to do with the application of Rankin for pension? Did he agree to do or not to do anything in connection with that,—with the application of Rankin,—or with any effort to influence the board to act wrongfully or improperly in regard to Rankin's application for pension? Unless he did,—unless he was connected in some way with the conspiracy between Rankin and Van Leuven (assuming, in order to explain the proposition of law that there was some arrangement entered into between Van Leuven and Rankin),—or was a participant therein, he cannot be said to be an accessory, or an accomplice to the conspiracy between Rankin and Van Leuven. This must be considered separately and apart from any matter between Allen and Van Leuven in regard to Allen's claim for pension, but, if Allen had no connection with, or did not enter into, the arrangement as between Van Leuven and Rankin in regard to Rankin's application, and he took no part in any arrangement or agreement in regard to influencing the board of examining surgeons touching Rankin's application for examination, providing any such arrangement was entered into, then he cannot be said to be an accomplice in the sense that you must disregard his testimony. If the evidence satisfies you he was a participant in that,—that he actually took part in the agreement, if any such there was, between Rankin and Van Leuven,—he would then occupy the position of an accomplice, and in that case his testimony could not be relied upon as corroborating the testimony of Rankin. If, under the instruction I have given you, you find that Allen was present at that interview; that he was not a participant in whatever arrangement was entered into between Van Leuven and Rankin in regard to Rankin's claim,—then you are to consider and determine the weight to be given Allen's testimony, as to whether it does or not sufficiently corroborate the testimony of Rankin to authorize you to give weight thereto. In determining the weight or credibility to be given to the testimony of witnesses who appear before you, you must take into account all the facts and circumstances that surround the witness, all the facts and circumstances that the evidence shows; and in determining the weight you give the testimony of Allen you should weigh that in the light of what you have seen in regard to Allen,—his demeanor, his mode of testifying, whatever interest he may have in the matter. You have a right to consider all this, and if, in your opinion, the evidence satisfies you he did in fact occupy the position of one who had no interest in the claim of Rankin, and that he took no part in regard thereto, but was simply present at the interview that took place between Van Leuven and Rankin, then you are to determine the weight that is to be given his testimony in corroboration of the testimony of Rankin, or as direct and positive

testimony itself to the commission of the offense. You must remember that Allen's testimony is as to the same interview that Rankin had, and he stands in a double attitude,—you can view him as a corroborating witness and as a direct witness, unless you find that he was in fact a participant in, and an accomplice of Rankin and Van Leuven in regard to, the alleged conspiracy they entered into. In that case, being uncorroborated, his testimony cannot be relied upon in corroboration of Rankin or as direct. But if you find that he was not connected with the arrangement, if any there was, between Rankin and Van Leuven, although he was present, and the conversation embraced the claims of both at the time, but all he was doing was with reference to his own claim, had nothing to do with the claim of Rankin, did not participate in any arrangement in regard to Rankin's claim, then he stands before you as a witness whose testimony is to be viewed as that of any other witness who was not an accomplice with Rankin and Van Leuven.

Now, then, gentlemen, the case of the government turns upon the conclusion you reach in regard to the testimony of these two witnesses, Rankin and Allen. That is the testimony upon which the government relies.

On the part of the defendant, the defendant himself, as he has a right to do under the law, has taken his position as a witness, and testified before you. He denies substantially the material matters in the testimony of Allen and Rankin in regard to the transaction alleged to have been had. In determining the weight, if any, to be given the testimony of Van Leuven as a witness, you of course must bear in mind the position he occupies. He is the defendant in the case. Upon the results of this case—upon your verdict—depends the question of the liberty and honor of the defendant. You are to view it as evidence with reference to that fact. Of course, we cannot shut our eyes to the fact that there are inducements of the most persuasive nature to tempt him so to testify that, if it be possible, he may escape a verdict of guilty. You are to take the facts and circumstances that surround him into consideration, and in your sound judgment determine the weight to be given the evidence he has given before you.

I have not attempted, gentlemen, to go over all the evidence that has been offered in this case. You must not suppose that by any failure or omission on my part in this particular you are to disregard any evidence in the case. You are to take into consideration all the evidence submitted to you. You are the judges of the credibility of the witnesses, of the weight to be given their evidence. You are to determine the questions of fact in the case, including the ultimate fact of the guilt or innocence of the defendant. Taking all the evidence, you are to determine whether or not the government has made out the charge against the defendant beyond a reasonable doubt. In considering the entire evidence, give it the weight you think, in the exercise of your best judgment, it is fairly entitled to; and, if the government has satisfied you beyond a reasonable doubt of the truth of the charge in the second count of the indictment, then that justifies a verdict of guilty at your hands. But if the evidence fails to satisfy

you beyond a reasonable doubt of the truth of the charge laid against the defendant, then your duty is to return a verdict of not guilty. The policy of the government in regard to pensions and the management of the pension office in conducting the affairs committed to its charge are not in issue in this case. The question for your decision is whether or not the defendant is guilty of the charge set forth in the second count of the indictment. If the evidence shows his guilt beyond a reasonable doubt, so say by your verdict. If the government has failed to prove the truth of the charge beyond a reasonable doubt, find the defendant not guilty. The case is one of importance. Consider it impartially, dispassionately. Give to both parties the benefit of the soundest and clearest judgment you can bring to bear upon the questions submitted to you, and return the verdict which in your best judgment the evidence demands and warrants, viewed in the light of the instructions I have given you upon the law.