THE STATE OF IOWA v. CHARLES JONES, Appellant.

Accessories After the Fact: NOT AN ACCOMPLICE: *Corroboration.* Code, section 5299, abrogates the distinction between an accessory before the fact and the principal, and provides that all persons concerned in the commission of a public offense,

whether they directly commit the act, or aid and abet its commission, though not present, should thereafter be indicted and punished as principals Section 5300 provides that an accessory after the fact can be indicted and punished though the principal is not tried. *Held*, that the distinction between accessories before and after the fact was still preserved, and that the accessory after the fact was not an accomplice, so as to require corroboration of his testimony to convict the principal.

"ACCOMPLICE" DEFINED. The test by which to determine whether a person is an accomplice to a crime is, could he be indicted for the same offense for which the principal is being tried?

Evidence: RETURN OF STOLEN MONEY. In a prosecution for larceny from the person, where a third person, accused as defendant's accomplice, testified that defendant gave him $25, stating that "he had got the old man's money," etc., evidence as to, the return of the money received by him to the victim was properly admitted.

POSSESSION OF STOLEN PROPERTY: *Presumption's*. In a prosecution for larceny from the person, where a third person, accused as an accomplice, testified that defendant gave him $25, stating that "he had got the old man's money,"' and where there was evidence showing a return of the money to the victim, an instruction as to the inference arising from the possession of the recently stolen money was properly given.

CORROBORATION OF ACCOMPLICE. The corroborative evidence necessary to convict a principal on the testimony of an accomplice need not go to the whole of the latter's testimony, but is sufficient if it corroborates some material part thereof.

*Same*. The corroborative evidence necessary to convict a principal on the testimony of an accomplice need not be direct, but may be circumstantial.-

*Sufficiency*. In a prosecution for larceny from B., an employe who was working at the hotel where B. was stopping testified that, the latter having been drinking, he took him to his room, and both fell asleep; that he was awakened by the landlady standing in the door, and went down stairs with her, and about five minutes later defendant, came down, called him into the wash room, and gave him $25, stating that "he had got the old man's money," and would divide, etc. The employe, when arrested, gave up the $25, which was returned. The landlady testified that the employe took B. to his room at her suggestion; that she afterwards discovered defendant in the hallway; that he

was not boarding at the hotel; that he went into the wash room with the employe on coming down stairs, etc. *Held*, that the employe's testimony was sufficiently corroborated to warrant sending the case to the jury.

Sentence: PRONOUNCED BY OTHER THAN THE TRIAL JUDGE. Where a judge presiding at a criminal prosecution, after receiving the verdict and denying a new trial, wrote out the sentence which he thought should be imposed, and handed it to another judge, the latter could, at his request, preside at the time fixed, and announce the sentence.

*Appeal from Audubon District Court.*—HON. A. B. THORNELL, Judge.

WEDNESDAY, DECEMBER 18, 1901.

DEFENDANT was indicted, tried, and convicted of the crime of larcency from the person, and from the judgment imposed, appeals.—*Affirmed.*

*H. W. Hanna* and *Geo. W. Cossen* for appellant.

*Chas. W. Mullan,* Attorney-General, and *Chas. A. Van Vleck,* Assistant Attorney-General for the State.

DEEMER, J—That the crime charged in the the indictment was committed by taking from the person of one Briggs the sum of $57 is clearly established by the evidence. To prove that the defendant was the guilty party, the state introduced as a witness one Aiton, who testified, in substance, that he was working at the hotel where Briggs was stopping when the larcency was committed; that Briggs, at the request of defendant, contributed some money for the purchase of whiskey, which Jones went out and procured; that Briggs drank immoderately of liquor, and that in the afternoon (the whiskey having been procured in the morning) he (witness) took Briggs to his room, and while sitting on the bed with Briggs both fell asleep, and that he (witness) did not awake until he was

called by the landlady of the house, who at that time was standing with the defendant in the door to Briggs' room; that he left Briggs asleep on the bed, and went downstairs with the landlady, leaving defendant in the room where Briggs was sleeping; that in about five minutes defendant, Jones, came down and called him (witness) to the wash room of the hotel, whither he went, and that Jones then pulled out a roll of money, saying, "What shall I do? Divide?" that thereupon he (Jones) counted out $25 and gave it to Aiton, stating at the time that he kept $27,—$2 for doing the work; that he (defendant) then stated that "he had got the old man's money," and advised him (Aiton) to "plant" his share, as he would do, and to say they had made the money in gambling; that they thereupon separated; and that in about half an hour defendant came back and asked if the old man had come down from his room. He also testified that he never had any talk with defendant about Briggs until he was called into the wash room; and that he supposed defendant gave him the money as "hush money." It also appears that defendant and Aiton were both arrested for the crime, and that after Aiton's arrest the $25 received by him was, at his request turned back to Briggs. The land lady testified, in substance, that Aiton showed Briggs to his room at her suggestion, and that afterwards she went up stairs and discovered Jones in the hallway; that she asked him what he was doing there, and that he colored up, smiled, and said he had just come up; that she discovered Aiton and Briggs asleep on the bed, and called Aiton, directing him to go about his work; that she did not disturb Briggs; that the three (Aiton, Jones, and herself) went downstairs, and defendant and Aiton went to the wash room, where they had a conversation lasting some 10 minutes; that Jones was not a boarder in the house, and had no business upstairs, and seemed to be excited when she met him there; that there was no one up-

stairs during the time Briggs was there but defendant, Aiton, and herself. Aiton testified that he had been indicted for receiving stolen property, and that his attorney had advised him to plead guilty. At the conclusion of the evidence for the state, defendant moved the court to direct a verdict of not guilty, for the reason, among others, that Aiton was an accomplice, and there was no evidence to corroborate him, as required by statute. This motion was overruled, and defendant then took the stand in his own behalf and gave his version of the affair. The case then proceeded in the regular way, resulting in a judgment of conviction.

I. Defendant insists that his motion to direct should have been sustained. This depends, of course, upon the answer to be given these two propositions: (1) Was Aiton an accomplice? and (2) was he sufficiently corroborated? Before the court would have been justified in directing a verdict, it should appear from the undisputed evidence that the first proposition should be answered in the affirmative, and the last in the negative. We will consider these in order. Aiton testified that he had no talk with Jones prior to the time the crime was committed, and that he supposed the money was given him to close his mouth. If this be true (and the jury was authorized to find it was), Aiton was not an accessary before the fact, as at common law, but an accessory after the fact. Is, then, an accessory after the fact an accomplice? The courts do not seem to be agreed on this proposition. See *Polk v. State,* 36 Ark. 117, and *Chitister v. State,* 33 Tex. Cr. App. 635 (28 S. W. Rep. 683), holding that he is, and *Lowery v. State,* 72 Ga. 649; *State v. Umble,* 115 Mo. 452 (22 S. W. Rep. 378), and *People v. Chadwick,* 7 Utah, 134 (25 Pac. Rep. 737) to the contrary. In *Rex. v. Moores,* 7 Car. & P. 270 (32 E. C. L. 507), it is held that a receiver of stolen goods is an accessory of the thief who stole them. See, also, *Roberts v. State,* 55 Ga. 220. But in *State v. Hayden,* 45

Iowa, 11, we held that a receiver of some of the stolen property obtained by a breaking and entering is not an accomplice in the burglary. It is there said that he might, perhaps, be an accomplice in a simple larcency, but not in burglary. In view of our statute making it a substantive offense for one to receive stolen property knowing it to have been stolen, we do not think that one who knowingly receives stolen property taken from the person of another is an accomplice in the latter crime. As sustaining the same view, see *Harris v. State,* 7 Lea. (Tenn.) 124. We are not unmindful of section 5299 of the Code. That section reads as follows: "The distinction between an accessory before the fact and a principal is abrogated, and all persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense, or aid and abet its commission, though not present, must hereafter be indicted, tried, and punished as principals." If, under this section, an accessory after the fact may be punished as principal, then there are strong reasons for saying that he is an accomplice of the principal. In *State v. Empey,* 79 Iowa, 460, this statute was considered, and the meaning of the words "aid and abet" explained, but whether or not an accessory after the fact could be tried and punished as a principal was left undecided. Language is used in the opinion which indicates that the writer was inclined to the view that he might be, but, as we have said, the court expressly refrained from deciding the point. The words "aid and abet in its commission," as used in this statute, manifestly have reference to some work or act of encouragment or assistance in the commission of the offense, and not to something done after the crime is complete. In other words, an accessory after the fact is not an aider and abettor, under this statute. That the legislature recognized a distinction between an accessory before and after the fact is apparent when we consider the next section of the Code, which reads as follows: "An accessory after the fact to the commission of a public

offense, may be indicted, tried and punished, though the principal be neither tried nor convicted." Under similar statutes it is held that an accessory after the fact cannot be indicted as principal. *People v. Gassaway,* 28 Cal. 405; *People v. Keefer,* 65 Cal. 232 (3 Pac. Rep. 818); *Wade v. State,* 71 Ind. 535; *State v. Jones,* 3 Wash. St. 175 (28 Pac. Rep. 254); *Reynolds v. People,* 83 Ill. 479 (25 Am. Rep. 410). We think our statutes still preserve the distinction between accessory before and after the fact, and that an accessory after the fact is not an accomplice in the main crime. But, if Aiton was an accomplice, it does not follow that the motion should have been sustained. Although an accomplice, if there was other evidence which corroborated him, and tended to connect the defendant with the commission of the offense, the case was for the jury. Such corroborated evidence need not go to the whole case. It is sufficient if it corroborates some material part of the accomplice's evidence tending to connect the defendant with the commission of the crime. *State v. Miller,* 65 Iowa, 60; *State v. Thompson,* 87 Iowa, 671. That there was such evidence is manifest from the statement made at the beginning of this opinion. This corroborating evidence need not be direct. Circumstantial evidence is sufficient, if it tends to connect the prisoner with the crime charged. *State v. Chauvet,* 111 Iowa, 687; *State v. Stanley,* 48 Iowa, 221; *State v. French,* 96 Iowa, 255; *State v. Russell,* 90 Iowa, 493. The motion to direct was properly overruled.

II. Evidence as to the return to Briggs of the money received by Aiton was proper, under the circumstances disclosed by the record. Defendant was a witness in his own behalf, and his cross-examination by the county attorney is complained of. We have gone over this part of the record with care and discover no error.

III. Certain of the instructions are complained of. In one the court said, in effect, that the test by which to

determine whether or not a person is an accomplice is, could he be indicted for the same offense for which the defendant was being tried? What we have said in the first division of this opinion largely answers the complaint made of this instruction. That the test given is the proper one, see *Com. v. Wood,* 11 Gray, 93; *Bass v. State,* 37 Ala. 469; *Dunn v. People,* 29 N. Y. 523 (86 Am. Dec. 319). The court properly left it to the jury to determine whether or not Aiton was an accomplice. An instruction with reference to the inference arising from the possession of recently stolen property was proper, in view of the evidence of Aiton, and the other testimony regarding the return of the money to Briggs. The instruction as to the corroboration is too long to be set out in full. It is sufficient to say that it follows the language of the statute, and is not vulnerable to the objection made. The distinction between the one given in this case and the one disapproved in *State v. Smith,* 102 Iowa, 656, is manifest. There is no merit in any of the objections to the instructions.

IV. The trial was had before the Hon. A. B. Thornell, who, after receiving the verdict and disposing of the motion for a new trial, left Audubon county for his home, in Fremont county. Before leaving he fixed the time for pronouncing judgment, and wrote out the sentence which he thought should be imposed. This written statement he handed to Hon. W. R. Green, a district judge of the same district, and asked him to preside at the time fixed, and announce sentence. This was done, and complaint is made of the procedure. We know of no reason for disapproving this course. Judge Green had authority to hold the court, and do any business that might regularly come before it. Without directions from Judge Thornell, he could dispose of any unfinished business of the term. But in this particular case he had full directions from Judge Thornell, and whatever of benefit there was to be derived from presiding over the trial. No possible prejudice re-

sulted to the defendant, and, were we to concede that the proceedings were irregular, which we do not, there would be no ground for disturbing the judgment.—AFFIRMED.