# WATSON *v.* STATE

[No. 12, October Term, 1955.]

212

*Decided November 8, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Fred Oken* for the appellant.

*Stedman Prescott, Jr., Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City,* and *James O'C. Gentry, Assistant State's Attorney,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This appeal was brought here by Uzell Watson, a Negro, age 41, from his conviction by the Criminal Court of Baltimore for the murder of a baby born to Bernice Washington, a Negress, age 24, on July 22, 1954.

The mother of this child was living in the front second-floor apartment in the house located at 522 North Fulton Avenue. Although unmarried, she had been living with a man named Aaron Allen, who was the father of her three-year-old child. Allen had supported her irregularly. He paid her rent when he felt like it, and gave her some money occasionally. She had worked in a lunch room and as a domestic servant, but had been unemployed for several weeks on account of her pregnancy.

On the morning of July 22 Bernice phoned to Iona Watson, appellant's wife, and asked her to come to her apartment immediately. Iona arrived before noon, performed an abortion upon Bernice by inserting a rubber tube into her body, and left immediately afterwards.

Shortly after Iona left, Bernice called for help to Polly Conway, who was the tenant of the rear second-floor apartment, telling her that she was about to have a baby. Polly came to her assistance, staying with her until after the child was born at about 3:15 p.m.

On the morning of July 26 Officer Dziwulski, of the Baltimore City Police Department, removed the body of an infant from the Baltimore harbor at York Street and Battery Avenue, about three miles from the Hanover Street bridge, put the body in a bucket, and took it to the City Morgue. The body measured 14 inches from crown to heel and weighed two pounds. Dr. William V. Lovitt, Assistant Medical Examiner, testified that it was so badly decomposed that he could not determine its color and sex, but he expressed the opinion that the period of gestation for a body 14 inches in length is about seven months.

On July 28 Polly Conway signed a statement at the Northwestern Police Station accusing appellant of the murder of the baby by drowning it in a tub of water. In this statement she said:

"When the bell rang, I let a man in by himself, who asked for Bernice, and I showed him into Bernice's apartment. He picked the baby up by his feet, and the baby started screaming, and he put the baby in a tub of water, and the baby started screaming, fighting and moving, and he put the baby in the water and let it in the water, and I was screaming. He told me to go get some whiskey. He gave me $10, and told me to get the whiskey, and I bought a half pint. * * * The whiskey it was for me, and I brought it back, and I drank some and he drank some. Bernice didn't drink any. The baby was still in the water. * * * He wrapped up the baby in an old chenille spread * * * and put the baby in a shopping bag, and he left."

On July 29 appellant signed a confession stating that, after Bernice Washington told him she did not want the baby, he put it in a tub of water, and that the baby might have had some life in it, but it did not move after he put it in the water; that it was Bernice's idea to put the baby in the water "to get rid of it"; that he wrapped it up in a large piece of cloth and put it in a shopping bag; that, after taking a drink of whiskey, he left with the baby in the shopping bag; and that at a street corner he gave two dollars to a man, whom he had never seen before, "to get rid of the package."

The grand jury found three indictments. One charged appellant and Bernice Washington with murder. Another charged Bernice Washington and Iona Watson as being accessories in the commission of the murder. The third charged Iona Watson with abortion.

Appellant, Bernice and Iona were tried jointly by the Criminal Court sitting without a jury. On the witness stand Bernice refused to say that her child was born alive. On cross-examination she replied: "When I looked at it, I didn't see it move. * * * I was lying down. * * * I just glanced at it."

Polly Conway, however, who was the chief witness for the State, testified without equivocation, as she had stated at the Northwestern Police Station, that the baby was born alive. She definitely testified that the baby had its eyes open, that it was crying, and that it fumbled with the covers on the bed. She described how appellant filled the foot tub with water, then picked the baby up by the feet and placed it in the tub. She also told how appellant took the baby out of the water, wrapped it in the spread, and put it in the shopping bag, and as he was leaving said he was going to throw it over the Hanover Street bridge.

Appellant was found guilty of murder in the first degree, and was sentenced to the Maryland Penitentiary for life. Bernice was found not guilty of murder, but guilty as an accessory. Iona was found not guilty as an accessory, but guilty of abortion.

Appellant contended that the trial judge erred in permitting Officer Dziwulski and Dr. Lovitt to testify, because the evidence failed to prove with certainty that the body which they described was that of the baby alleged to have been murdered. Dr. Lovitt admitted that positive identification of the body was impossible. However, the rule is well established that evidence, to be admissible, need not be connected positively with the crime alleged. If there is a reasonable probability of its connection with the crime alleged because of the circumstances, it is admissible. *Purviance v. State,* 185 Md. 189, 193, 44 A. 2d 474; *Hayette v. State,* 199 Md. 140, 144, 85 A. 2d 790.

In the case at bar the size of the body, the period of gestation of seven months, and the extent of decomposition all pointed to the probability that the body found by Officer Dziwulski on July 26 was that of the baby whom the appellant was accused of murdering on July 22. Dr. Lovitt admitted that an average of 24 bodies of babies have been found annually in the harbor of Baltimore. However, he stated that the body found on July 26 was the only one brought from the harbor to the morgue between July 22 and July 29. We find no prejudicial error in the admission of the testimony of the policeman and the Assistant Medical Examiner.

Moreover, the *corpus delicti* was clearly established by direct evidence. In a murder prosecution the proof of the *corpus delicti* is sufficient if it establishes the fact that the person for whose death the prosecution was instituted is dead and that the death occurred under circumstances which indicate that it was caused criminally by someone. *Jones v. State,* 188 Md. 263, 272, 52 A. 2d 484.

Appellant's principal contention was that the evidence was insufficient to sustain the conviction, because it failed to prove that the baby was alive when it was placed in the tub of water. He claimed that, while it was true that Polly Conway testified that the baby was alive and

that it was drowned by him, she was his accomplice and he should not be convicted upon her uncorroborated testimony.

It is a firmly established rule in this State that a person accused of crime may not be convicted on the uncorroborated testimony of an accomplice. *Meyerson v. State,* 181 Md. 105, 112, 28 A. 2d 833; *Swann v. State,* 192 Md. 9, 63 A. 2d 324. The reason for the rule requiring the testimony of an accomplice to be corroborated is that it is the testimony of a person admittedly contaminated with guilt, who admits his participation in the crime for which he particularly blames the defendant, and it should be regarded with great suspicion and caution, because otherwise the life or liberty of an innocent person might be taken away by a witness who makes the accusation either to gratify his malice or to shield himself from punishment, or in the hope of receiving clemency by turning State's evidence. *People v. Sapp,* 282 Ill. 51, 118 N. E. 416, 422; *United States v. Van Leuven,* 65 F. 78, 82.

An accomplice is one who knowingly, voluntarily, and with common interest with the principal offender, participates in the commission of a crime either as principal or as accessory before the fact. *Hall v. Commonwealth,* Ky., 248 S. W. 2d 417; *Singer v. United States,* 278 F. 415, 419. The test for determining whether a person is an accomplice of a defendant charged with a felony is whether he could be indicted and punished for the crime charged against the defendant. *People v. Konkowski,* 378 Ill. 616, 39 N. E. 2d 13; *People v. Walker,* 88 Cal. App. 2d 265, 198 P. 2d 534.

At common law there are no accessories in misdemeanors, but all persons who aid or encourage the commission of a misdemeanor are principals. *Roddy v. Finnegan,* 43 Md. 490, 503, 504. In felonies the accessories may be either "accessories before the fact" or "accessories after the fact." An accessory before the fact is one who aids or abets the principal offender before or at the time of the commission of the crime. An accessory

after the fact is one who, knowing that a felony has been committed, harbors and protects the felon or renders him any other assistance to elude punishment.

In 1 *Bishop, Criminal Law,* 9th Ed., sec. 673, the author comments as follows on the offense of accessory before the fact:

> "This distinguishing of the accessory before the fact from the principal is a pure technicality. It has no existence either in natural reason or the ordinary doctrines of the law. For in natural reason the procurer of a crime is not chargeable differently from the doer; and a familiar rule of the common law is that what one does through another's agency is regarded as done by himself. Even the common law of crimes makes no distinction in the punishment between a principal and an accessory,—the offence of each being a felony, of which the penalty was originally death. Likewise in morals, there are circumstances wherein we attach more blame to the accessory before the fact than to his principal; as, where a husband commands his wife or a master his servant to do for his benefit a criminal thing which, in his absence, is done reluctantly through fear or affection overpowering a subject mind."

In Section 692 Bishop comments as follows on the offense of accessory after the fact:

> "In reason also, one who renders this assistance, thus adding his will to an evil thing after another has done it, does not thereby become a partaker in the guilt because only when an act and evil intent concur in time, is a crime committed. Therefore it is not from the reasoning of the law, but from ancient practice confirmed by modern, that the helper of a felon after the fact is classed as an accessory. This technical rule has become too fundamental in the common

law of crime to be overcome by juridical reasoning.

"The origin of this blemish in our legal classification is not quite certain. We may presume that anciently the helping of a felon to elude punishment was deemed equal in evil with the act of him who was helped; that the judges, who gave shape to our common law, thought it not safe in a capital case to convict the one rendering this assistance in advance of the one assisted; and, therefore, this second offense, scientifically independent of the first, was called accessorial, and its perpetrator an accessory."

In the case before us there was no evidence that Polly Conway knew that appellant was going to kill the child until he got the tub of water and put the child in the water. Nor was there any evidence that she aided or abetted the crime or encouraged it. Nor did the evidence show that she had any motive for participating in an infanticide. While appellant was the husband of a woman who had come to perform an abortion, Polly was merely a neighbor who had come to assist a woman while she was giving birth to a child without the aid of a doctor.

Polly admitted that she made no objection when appellant placed the baby in the tub of water, and that she did not notify the police. But the fact that a person witnesses a crime and makes no objection to its commission and does not notify the police does not make him an accomplice. To be an accomplice a person must participate in the commission of a crime knowingly, voluntarily, and with common criminal intent with the principal offender, or must in some way advocate or encourage the commission of the crime. *Anello v. State,* 201 Md. 164, 168, 93 A. 2d 71; *Butt v. State,* 81 Ark. 173, 98 S. W. 723, 727; *Miller v. Commonwealth,* 240 Ky. 355, 42 S. W. 2d 523; *Hicks v. State,* 126 Tenn. 359, 149 S. W. 1055; *State v. Cartright,* 188 Iowa 579, 174 N. W. 586.

*People v. Jackerson,* 247 N. Y. 36, 159 N. E. 715, is an illustration of the requirement of criminal intent. In

that case the Court of Appeals of New York held that the fact that a girl awakened her brother at 2 o'clock in the morning at his request, knowing that he intended to commit a crime, did not make her, in testifying against the brother in a prosecution for receiving stolen property, an accomplice, unless she was a part of the conspiracy and did it with an intention of assisting in the commission of the crime.

We think the evidence is not sufficient to prove that Polly Conway was a part of a conspiracy or intended to aid or encourage the commission of a murder. When asked on the witness stand why she did not object when appellant put the baby in the tub, she said: "I was just scared, that is all." When asked why she did not notify the police when she went to the store for the whiskey, she said: "Because I was scared." When asked whether appellant threatened her, she said: "No, he didn't threaten me. He just told me it wasn't any of my business." When the police came to see her in the course of their investigation six days later, she made a complete statement in answer to their interrogation.

Appellant finally urged that, even if Polly Conway was not an accessory before the fact, she was an accessory after the fact. He swore on the witness stand: (1) that Bernice told Polly to wrap up the baby and to get the shopping bag; (2) that Polly got the bag and put the baby in it; and (3) that, as he had parked his automobile around the corner, he asked Polly to meet him at the door, and she came out on the pavement and handed the bag to him. Polly denied those allegations. But, even assuming them to be true, they do not constitute her his accomplice, for it is clear, upon both reason and the overwhelming weight of authority, that an accessory after the fact is not an accomplice in the commission of a crime, inasmuch as he does not become connected with the crime until after its commission. *State v. Lyons,* 144 Minn. 348, 175 N. W. 689; *Walker v. State,* 118 Ga. 757, 45 S. E. 608; *Hall v. Commonwealth,* Ky., 248 S. W.

2d 417; *State v. Umble,* 115 Mo. 452, 22 S. W. 378; *State v. Merrill,* Mo., 263 S. W. 118; *State v. Jones,* 115 Iowa 113, 88 N. W. 196; *State v. Grimmett,* 33 Idaho 203, 193 P. 380; *People v. Conrad,* 125 Cal. App. 2d 184, 270 P. 2d 31.

A striking illustration is *State v. Riddell,* 38 R. I. 506, 96 A. 531. There it was held by the Supreme Court of Rhode Island that although the son of the owner of a store knew of his father's plan to burn the store with intent to defraud an insurance company, and although he threw away an empty can, which had been used to carry gasoline to the premises, after his father's plan had been accomplished, nevertheless the son's knowledge of the plan and his failure to take any steps to prevent the crime was not sufficient to constitute him an accomplice, and therefore the father could be convicted upon the son's testimony without corroboration.

When a criminal charge has been tried by the court sitting without a jury, the Court of Appeals may review upon both the law and the evidence to determine whether in law the evidence is sufficient to sustain the conviction. The verdict of the trial court shall not be set aside on the evidence unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. General Rules of Practice and Procedure, part 4, subd. 1, rule 7(c); *Edwards v. State,* 198 Md. 132, 151, 81 A. 2d 631, 83 A. 2d 578, 26 A. L. R. 2d 874; *Floyd v. State,* 205 Md. 573, 109 A. 2d 729.

Even if our decision were otherwise on the question of accessory, we think there was ample testimony to corroborate the testimony of Polly Conway.

We find nothing in this case to warrant us in holding that the verdict of the trial court was clearly erroneous. The judgment entered on the verdict must therefore be affirmed.

*Judgment affirmed, with costs.*