859 A.2d 679

In re ANTHONY W.

No. 2341, Sept. Term, 2002.

Court of Special Appeals of Maryland.

Oct. 15, 2004.

Michael R. Braudes (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Devy Patterson Russell (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellee.

Panel: MURPHY, C.J., THEODORE G. BLOOM, (Retired, Specially Assigned), JAMES S. GETTY, (Retired, Specially Assigned), JJ.

JAMES S. GETTY, Judge (Retired, Specially Assigned).

Anthony W., appellant herein, appealed the finding of the Circuit Court for Frederick County, sitting as a juvenile court, which held that appellant committed the delinquent act of malicious destruction of property. Appellant argues that the evidence was not legally sufficient to sustain the court's decision because there was no corroboration of the testimony of two alleged accomplices who were also charged with committing delinquent acts.

### Background Facts

Sometime after midnight on May 11, 2002, three young men were, according to one of the three, "just driving around, cuz [sic] there was really nothing to do." Being overcome by boredom resulted in the malicious destruction of a school bus parked on the grounds of Kempton Elementary School and the theft of a box of road flares from the bus by the three individuals.

The testimony presented by the State at trial was as follows: Keith Steers, the front seat passenger, testified that Anthony W., appellant, told Jose Gonzales, the driver, to stop the car. Appellant got out of the back seat and went toward a

school bus. Steers and Gonzales then got out of the car and went to the rear of a bus about 15 feet from the car.

According to Steers, appellant entered the bus by breaking the glass in the front door. He smashed a number of windows with a fire extinguisher stored in the bus and then sprayed the interior of the bus. Allegedly, Steers and Gonzales, who entered the bus shortly after appellant, attempted to stop appellant from continuing to break the windows. Neither Steers nor Gonzales broke any windows, but they removed a box of road flares as all three left the school bus.

Significantly, the trial judge stated, "I have some reservations about Keith Steers' testimony from his backing and forthing."

The State's second witness, Gonzales, after being advised by the court of his rights, declined to testify until the State entered a "*nol pros* with prejudice" on the theft charge. Thereafter, Gonzales testified that appellant broke into a school bus and smashed the windows with a fire extinguisher, despite being told to stop. He admitted, "We circled the bus one time to see if any windows were open." Gonzales admitted that he stole the flares and Steers took one from the box.

### Court Proceedings

At the conclusion of the State's case, appellant moved for judgment of acquittal, alleging that the State's case consisted of the testimony of two accomplices that was not corroborated in any manner. The court denied the motion.

The trial court's analysis was as follows:

It seems to me that this misdemeanor destruction of property began with the respondent alone on the school bus. The fact that Gonzales and Steers at some point in this continuum may have committed independent crimes, misdemeanors, does not make them accomplices to this in the sense of the word for purposes of the evidentiary rule. For that reason I'm ... going to find that Tony is involved as to [the] charge of malicious destruction of property.

Thus, the State argued, and the court concluded, that Steers and Gonzales were not accomplices, because they were charged with different crimes. Appellant, in their view, was charged with malicious destruction of property, and Steers and Gonzales were charged with theft. As we shall explain later herein, the novel approach adopted by the court may be a distinction without a difference in defining accomplice testimony.

## The Law

The Accomplice Rule was created by the Court of Appeals 92 years ago in the case of *Luery v. State*, 116 Md. 284, 81 A. 681 (1911). The rationale for the rule was stated at that time by Chief Judge Boyd, who opined:

It is unsafe, at least in the great majority of cases, to rest a conviction upon the uncorroborated testimony of an accomplice. Anyone who has had experience at *nisi prius* trials knows how captivating is the story of one relating the circumstances connected with some mysterious crime. When such a one has as a motive the prospect of freedom, a milder sentence or the favor of the officer who may have him in charge, an innocent one may be made to suffer, if great caution is not used. Hence it would seem to be safer to require some corroboration.

The reason for the rule was reiterated by Chief Judge Robert C. Murphy for the Court in *Brown v. State*, 281 Md. 241, 243–44, 378 A.2d 1104 (1977):

The corroborative evidence must relate to material facts tending either (1) to identify the accused with the perpetrators of the crime or (2) to show the participation of the accused in the crime itself.... If with some degree of cogency the corroborative evidence tends to establish either of these matters, the trier of fact may credit the accomplice's testimony even with respect to matters as to which no corroboration was adduced. *McDowell v. State*, 231 Md. 205, 189 A.2d 611 (1963). That corroboration need not extend to every detail ... is also settled by our cases.

Judge Delaplaine, in *Watson v. State*, 208 Md. 210, 117 A.2d 549 (1955), explained the necessity for the corroboration rule in the following terms:

> The reason for the rule requiring the testimony of an accomplice to be corroborated is that it is the testimony of a person admittedly contaminated with guilt, who admits his participation in the crime for which he particularly blames the defendant and it should be regarded with great suspicion and caution, because otherwise the life or liberty of an innocent person might be taken away by a witness who makes the accusation either to gratify his malice or to shield himself from punishment, or in the hope of receiving clemency by turning State's evidence.[1]

All of these cases, however, were criminal cases, not proceedings in juvenile court.

### *This Case*

The Accomplice Rule was designed precisely to avoid what occurred in the present case. Two respondents come into court and testify that the third person involved committed the malicious destruction of property (breaking school bus windows).

The two witnesses seek to bolster their credibility by admitting that they stole a box of flares from the bus. At the time of their testimony, the charges against Steers had been stetted by the State, and Gonzales had refused to testify until his charges were *nol prossed.* The trial court expressed reservations about Steers's credibility due to his lying to a different judge about the theft of the flares. Gonzales blamed appellant for the entire breaking into the bus despite the fact that he

---

1. The federal courts and approximately 30 states follow the common law view that the testimony of an accomplice, although uncorroborated, is sufficient to warrant a conviction if it convinces the trier of fact beyond a reasonable doubt of the guilt of the accused. *See Bennett v. State,* 283 Md. 619, 623 n. 4, 392 A.2d 76 (1978). Maryland continues to follow the Rule recognizing the escalating use of accomplices by prosecutors. The rule recognizes the questionable reliability of accomplice testimony.

drove the car to the school property, he circled the bus "around one time to see if there were any windows open," and he entered the bus and stole the flares. None of the testimony from either witness was corroborated in any manner. The facts of this case establish clearly why the rule requiring corroboration is alive and well.

Appellant's counsel, presumably as a trial tactic, did not present any evidence and relied upon the rule as a basis for dismissal. The State argued that Steers and Gonzales were not accomplices in the breaking of the windows, because they were unaware that appellant intended to vandalize the bus, and they did not participate.

The trial court reasoned:

This misdemeanor destruction of property began with the respondent himself alone on the school bus. That the fact that Gonzales and Steers at some point in this continuum may have committed independent crimes, misdemeanors, does not make them accomplices to this in the sense of the word for purposes of the evidentiary rule.

### Discussion

■ "An accomplice is one who knowingly, voluntarily, and with common interest with the principal offender, participates in the commission of a crime either as principal or as accessory before the fact." *Watson v. State*, 208 Md. 210, 217, 117 A.2d 549 (1955). In our view, the three miscreants were all principals in the misdemeanor offenses of malicious destruction of the bus and the theft of property therein. They drove to the scene and drove around looking for open windows on a bus, from which one may reasonably infer they intended to enter. Finding no easy access, appellant broke the door of a bus and entered. The alleged accomplices voiced no objection until the window breaking ensued. The offense was committed when the door was broken open; the window breaking was not a separate offense, it was an acceleration of the illegal activity in which all three engaged. We know of no authority for defining an accomplice based on who did what after an

illegal entry is gained. The objective was to enter the bus by whatever means was required.

■ The issue neither party addressed is whether the accomplice-corroboration rule applies to juvenile proceedings. That issue is a matter of first impression in Maryland. Our research has disclosed several reported cases addressing that question.

In *Munhall v. State of Arkansas*, 337 Ark. 41, 986 S.W.2d 863 (1999), the Supreme Court of Arkansas held that the Arkansas statute[2] requiring corroboration of the testimony of an accomplice did not apply to juvenile proceedings. The court's opinion states:

> Appellant appealed from the chancery court, juvenile division's adjudication of delinquency and order to pay $1,000 as restitution for a burglary and a theft of $1,000 from a residence in Russelville. Aaron Royce who was found by the chancery court to be an accomplice to the crimes, testified that he entered the residence with fourteen year old appellant who took between $100 and $1,000 therefrom.

After the testimony was completed, defendant's counsel moved to dismiss the charges of burglary and theft and argued that the only testimony connecting defendant to the crime was that of the accomplice, which is insufficient as a matter of law. The trial court denied the motion to dismiss and held that the victim's testimony was sufficient corroboration.

On further appeal, the Supreme Court of Arkansas held that the clear legislative intent as evidenced by the plain language of the statute limits its applicability to adults. The words "conviction," "felony," and "defendant" do not apply in juvenile proceedings. "The legislature has had since 1883,

---

2. Ark.Code Ann., Sec. 16–89–111(e)(1) (1987).

A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof.

when the statute was enacted, to make it applicable to juvenile proceedings if it had a mind to," the court concluded.

The court in *Munhall, supra,* cited with approval *In re Mitchell P.,* 22 Cal.3d 946, 151 Cal.Rptr. 330, 587 P.2d 1144 (1978), and *In re E.L.B.,* 172 Cal.App.3d 780, 218 Cal.Rptr. 429 (1985). In *Mitchell P.,* the California Supreme Court reasoned that, as long as basic due process and other constitutional demands are satisfied, reasonable differences in criminal and juvenile evidentiary standards are still permissible.

A number of states have held, however, that the accomplice-corroboration rule applies to juvenile proceedings. *See T.L.T. v. State,* 133 Ga.App. 895, 212 S.E.2d 650 (1975). That court referred to the Juvenile Court Code as being analogous to "The Juvenile's Bill of Rights."

In addition to defendants being entitled to notice of hearing, right of counsel, privilege against self-incrimination, confrontation, cross-examination, and proof of charges of a criminal nature beyond a reasonable doubt, the Georgia court opined that a trial court must include such ingredients as the presumption of innocence, the requirement that if the court's finding is based entirely upon circumstantial evidence then the facts proved shall exclude every other reasonable hypothesis save that of guilt, and the necessity of producing independent evidence to that of an accomplice for a finding of guilt when based upon the latter's testimony. Absent all of the above, a fair trial has not occurred, according to the Georgia court.

The Supreme Court of North Dakota reversed an order declaring a juvenile to be delinquent and in need of treatment for failure to advise the minor of his right to counsel under the Uniform Juvenile Court Act. Additionally, the court agreed with defense counsel that the testimony of an accomplice required corroboration by other evidence. *See In the Interest of B.S., a child. Shirey v. R.S. and B.S., his parents,* 496 N.W.2d 31 (N.D.1993).

In *C.R.B. v. State of Oklahoma,* Okl.Cr., 638 P.2d 1130 (1982), the Court of Criminal Appeals stated that the statute which requires that the testimony of an accomplice be corrobo-

rated by other evidence that tends to connect the defendant with the commission of the offense has been applied to juvenile adjudications of delinquency. *Accord Smith v. State,* Okl.Cr., 525 P.2d 1251 (1974) (holding that a 14–year–old boy was entitled to the traditional requirement of corroboration of an accomplice's testimony as would be afforded an adult charged with a criminal offense). The court acknowledged that no constitutional requirement was implicated, but as a matter of policy the ruling was necessary to preserve the integrity of the evidence.

Finally, in *A Minor v. Juvenile Dept. Fourth Judicial District,* 96 Nev. 332, 608 P.2d 509 (1980), the Supreme Court of Nevada held that the accomplice corroboration requirement applies to proceedings wherein minors are adjudged juvenile delinquents. The statute, the court stated, requires proof beyond a reasonable doubt upon *competent,* material, and relevant evidence that a child has committed the acts by reason of which he is alleged to be delinquent. In affirming the conviction, both the juvenile and appellate courts held that the witness whose testimony was being challenged was not an accomplice in that he did not "unite" in the commission of the crime.

The seminal case, *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), is instructive on the issue of due process of law in juvenile delinquency proceedings. In an opinion by Justice Fortas, expressing the view of five members of the Supreme Court, it was held that due process of law was denied a 14–year–old boy who was committed to an Arizona commitment center in a scenario that exceeded even a Star Chamber proceeding. The charge was making an obscene phone call. The alleged trial proceeded without the petition being served or the child or his parents being advised of any of his constitutional rights, and without the complainant being present.

The Supreme Court reversed, stating that juvenile delinquency proceedings which may lead to commitment in a state

institution must measure up to the essentials of due process and fair treatment, including

1.  written notice of the charges to the child and parents in advance to allow preparation;

2.  notification of the right to either retained or appointed counsel;

3.  awareness of the constitutional privilege against self-incrimination; and

4.  absent a valid confession, a determination of delinquency and an order of commitment based only on sworn testimony subject to the opportunity for cross-examination in accordance with constitutional requirements.

The holding in *Gault* clearly requires that the basic constitutional procedural guarantees under the due process clause of the Fourth Amendment applicable to adversary criminal trials apply as well to juvenile causes. This does not necessarily resolve the matter before us, because the accomplice-corroboration rule, despite its laudatory purpose, to eliminate suspect testimony, has not been afforded constitutional status.

One Maryland case to be considered is *In re Victor B.*, 336 Md. 85, 646 A.2d 1012 (1994), authored by Judge Irma Raker for the Court of Appeals. The issue in that case was whether the Criminal Rules of Procedure, under Title 4 of the Maryland Rules, apply to an adjudicatory proceeding in a juvenile cause. The Court held that they do not.

In that case, a master for juvenile causes in the Circuit Court for Baltimore City held an adjudicatory hearing on a delinquency petition filed by the State against Victor B., alleging one count of possession of cocaine with intent to distribute and one count of possession of cocaine. Victor B. objected to the testimony pertaining to the CDS, but the master would not consider the objection, because no motion to suppress the evidence was filed prior to the hearing.

The State argued that the juvenile rules do not deal with motions to suppress in juvenile proceedings and, therefore, the

rules in Title 4 are applicable where there is no guidance in the juvenile rules.

The Court of Appeals acknowledged, citing *In re Gault,* the increasing penal overtones of juvenile court proceedings that have led to a guarantee that most of the due process protections afforded adults encompassed juveniles charged with delinquency. The Court concluded, however, that the Juvenile Causes Act "gives clear indication that juvenile proceedings are not criminal matters and that they retain their special and informal nature." (Citing *In re Fletcher,* 251 Md. 520, 533, 248 A.2d 364 (1968), *cert. denied,* 396 U.S. 852, 90 S.Ct. 112, 24 L.Ed.2d 101 (1969).)

Thus, the Court concluded that, pursuant to Md. Rule 1–101, Title 2 applies to civil matters in the circuit courts, except for juvenile causes; Title 3 applies to civil matters in the District Court; Title 4 applies to criminal matters, post conviction, and expungement of records in the District Court and circuit courts; and Title 11 applies to juvenile causes under Courts Article, Title 3.

### Conclusion

An argument can be made that a juvenile faced with the possibility of removal from his home and placement in some state facility for rehabilitation or treatment is no less entitled to the benefit of the accomplice-corroboration rule than an adult faced with possible incarceration for committing an identical offense. That analogy supports the concept of fundamental fairness.

An opposing view would recognize that due process has been mandated by *Gault* and by the philosophy of juvenile court legislative enactments. The former includes notice of the charges, the right to counsel, the right to cross-examine witnesses, the privilege against self-incrimination, and the requirement that proof of delinquency be established beyond a reasonable doubt.

Pellucidly, juvenile proceedings are of a special nature designed to resolve problems, not to punish for crime. The

proceedings are civil in nature and informal in practice. The fact that no jury trials are available in juvenile proceedings is indicative of the trust and confidence that judges can best carry out the objectives of the Juvenile Causes Act.

Obviously, the issue of requiring corroboration of accomplice testimony in juvenile cases is not a major problem here or elsewhere. Only a few states have addressed the issue. A separate system for juvenile offenders, civil in nature, evolved in Maryland approximately 35 years ago, yet this is the first case raising the issue.

Judges in criminal proceedings are fully aware that accomplice testimony must be carefully scrutinized. Such testimony is suspect because it originates from witnesses already tainted with guilt whose primary motive may be to obtain a reduced sentence in exchange for cooperation. We have no reason to doubt that those same judges, when sitting in civil juvenile causes, apply the same scrutiny to accomplice testimony without regard to the rule requiring corroboration. Stated differently, this is not a case where the procedure is broke and needs to be fixed. Neither are we required to adopt the oft quoted and frequently meritorious adage, "If it ain't broke, don't fix it."

No constitutional requirement is implicated in this discussion. Undeniably, juvenile proceedings in Maryland provide the procedural due process mandated by the Supreme Court in *Gault, supra*. Applying the corroboration rule to juvenile proceedings, therefore, is a policy decision, not a question of constitutional or statutory interpretation. One positive result of applying the rule to juvenile proceedings would be that the integrity of the evidence would be preserved if corroboration of the testimony of an accomplice were required.

We conclude that, as a matter of sound policy, the rule should apply in juvenile proceedings. The Court of Appeals, we recognize, may disagree. Accordingly, we reverse the decision of the trial court.

**JUDGMENT REVERSED.**

**COSTS TO BE PAID BY FREDERICK COUNTY.**

Dissent by MURPHY, C.J.

MURPHY, Chief Judge, dissenting.

I agree that the "accomplice-corroboration rule" is applicable to a delinquency proceeding. It is well settled, however, that a witness may be an accomplice to some—but not to all—crimes committed by the defendant who claims the benefit of the rule.[3] It is also well settled that the defendant who claims the benefit of the accomplice-corroboration rule has "the burden of proving [by a preponderance of the evidence] that the State's witness ... was an accomplice." *Bennett v. State,* 283 Md. 619, 627, 392 A.2d 76 (1978). This burden of persuasion should be applicable in a delinquency proceeding.

In the case at bar, the circuit court was simply not persuaded that—although they did indeed become accomplices to certain of the delinquent acts—the State's witnesses were not accomplices to the appellant's delinquent act of malicious destruction of property. On the basis of that non-clearly erroneous factual finding, I would affirm the judgment of the circuit court.

---

**3.** See *People v. Cruz,* 291 A.D.2d 1, 737 N.Y.S.2d 16 (2002) for a discussion of cases in which courts have held that the accomplice-corroboration rule did not apply to the *entire* testimony of a witness who was an accomplice to some, but not all, of the crimes allegedly committed by the defendant.